## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009

      Plaintiff,

      v.

PRESIDENTIAL ADVISORY COMMISSION ON
ELECTION INTEGRITY; MICHAEL PENCE, in his
official capacity as Chair of the Presidential Advisory
Commission on Election Integrity; KRIS KOBACH, in his
official capacity as Vice Chair of the Presidential Advisory
Commission on Election Integrity; EXECUTIVE OFFICE
OF THE PRESIDENT OF THE UNITED STATES;
OFFICE OF THE VICE PRESIDENT OF THE UNITED
STATES;
The White House
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

GENERAL SERVICES ADMINISTRATION
1800 F Street, N.W.
Washington, D.C. 20405

      Defendants.

Case: 1:17−cv−01320
Assigned To : Kollar−Kotelly, Colleen
Assign. Date : 7/3/2017
Description: TRO/PI

## COMPLAINT FOR INJUNCTIVE RELIEF

1.     This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–706,

the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2, and the United States

Constitution for injunctive and other appropriate relief to halt the collection of state voter data by

the Presidential Advisory Commission on Election Integrity (the "PACEI" or the

"Commission"), by officers of the Commission, and by the agencies which oversee and facilitate the activities of the Commission.

2.      The Electronic Privacy Information Center ("EPIC") challenges the Commission's intent to collect the personal data of millions of registered voters and to publish partial SSNs as an unconstitutional invasion of privacy and a violation of the agency's obligation to conduct a Privacy Impact Assessment ("PIA").

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 5 U.S.C. § 702, and 5 U.S.C. § 704. This Court has personal jurisdiction over Defendants.

4.      Venue is proper in this district under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

## Parties

5.      Plaintiff EPIC is a nonprofit organization incorporated in Washington, D.C., and established in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's mission is oversight and analysis of government activities. EPIC's Advisory Board members include distinguished experts in law, technology, public policy, and cybersecurity. EPIC has a long history of working to protect voter privacy and the security of election infrastructure. EPIC has specific expertise regarding the misuse of the Social Security Number ("SSN") and has sought stronger protections for the SSN for more than two decades.

6.      EPIC's members include registered voters in California, the District of Columbia, Florida, Maryland, Massachusetts, Minnesota, New York, Pennsylvania, Texas, and Washington.

7.      Defendant PACEI is an advisory committee of the U.S. government within the meaning of FACA, 5 U.S.C. app. 2 § 10. Defendant PACEI is also an agency within the meaning of 44 U.S.C. § 3502 and the APA, 5 U.S.C. § 701.

8.      Defendant Michael Pence is the Vice President of the United States and the Chair of the PACEI.

9.      Defendant Kris Kobach is the Secretary of State of Kansas and the Vice Chair of the PACEI.

10.     Defendant Executive Office of the President of the United States ("EOP") is an agency within the meaning of 44 U.S.C. § 3502 and the APA, 5 U.S.C. § 701.

11.     Defendant Office of the Vice President of the United States ("OVP") is a subcomponent of EOP and an agency within the meaning of 44 U.S.C. § 3502 and the APA, 5 U.S.C. § 701.

12.     Defendant General Services Administration ("GSA") is an agency within the meaning of 44 U.S.C. § 3502 and the APA, 5 U.S.C. § 701. The GSA is charged with providing the PACEI "such administrative services, funds, facilities, staff, equipment, and other support services as may be necessary to carry out its mission . . . ." Ex. 1.[1]

## Facts

### The Commission's Unprecedented Collection of State Voter Data

13.     The Commission was established by Executive Order on May 11, 2017 ("Commission Order"). Ex 1.[2]

14.     The Commission is charged with "study[ing] the registration and voting processes used in Federal elections." Ex. 1.[3] The Commission Order contains no authority to gather personal data or to undertake investigations.[4]

15.     On June 28, 2017, the Vice Chair of the Commission undertook to collect detailed voter histories from all fifty states and the District of Columbia. Such a request had never been made

---

[1] Exec. Order. No. 13,799, 82 Fed. Reg. 22,389, 22,390 (May 11, 2017).
[2] 82 Fed. Reg. at 22,389; *see also Voter Privacy and the PACEI*, EPIC.org (June 30, 2017), https://epic.org/privacy/voting/pacei/.
[3] 82 Fed. Reg. at 22,389.
[4] *See generally id.*

by any federal official in the history of the country. The Vice Chair stated during a phone call with PACEI members that "a letter w[ould] be sent today to the 50 states and District of Columbia on behalf of the Commission requesting publicly-available data from state voter rolls . . . ." Ex. 2.[5]

16.     According to the U.S. Census, state voter rolls include the names, addresses, and other personally identifiable information of at least 157 million registered voters.[6]

17.     One of the letters from the Commission, dated June 28, 2017, was sent to North Carolina Secretary of State Elaine Marshall. Ex. 3.[7]

18.     In the letter ("Commission Letter"), the Vice Chair urged the Secretary of State to provide to the Commission the "full first and last names of all registrants, middle names or initials if available, addresses, dates of birth, political party (if recorded in your state), last four digits of social security number if available, voter history (elections voted in) from 2006 onward, active/inactive status, cancelled status, information regarding any felony convictions, information regarding voter registration in another state, information regarding military status, and overseas citizen information." Ex. 3.[8]

19.     The Commission Letter also asked "[w]hat evidence or information [the state had] regarding instances of voter fraud or registration fraud" and "[w]hat convictions for election-related crimes ha[d] occurred in [the] state since the November 2000 federal election." Ex. 3.[9]

---

[5] Press Release, Office of the Vice President, Readout of the Vice President's Call with the Presidential Advisory Commission on Election Integrity (June 28, 2017).
[6] U.S. Census Bureau, *Voting and Registration in the Election of November 2016* at tbl. 4a (May 2017), https://www.census.gov/data/tables/time-series/demo/voting-and-registration/p20-580.html.
[7] Letter from Kris Kobach, Vice Chair, PACEI, to Elaine Marshall, Secretary of State, North Carolina (June 28, 2017).
[8] *Id.* at 1–2.
[9] *Id.* at 1.

20.     The Commission Letter stated that "any documents that are submitted to the full Commission w[ould] also be made available to the public." Ex. 3.[10]

21.     The Commission asked for a response by July 14, 2017. Ex. 3.[11] The "SAFE" URL, recommend by the Commission for the submission of voter data, leads election officials to a non-secure site. Regarding this website, Google Chrome states: "Your connection is not private. Attackers may be trying to steal your information from [the site proposed by the Commission] (for example, passwords, messages, or credit cards)." Ex. 4.[12]

<u>Many States Oppose the Commission's Demand for Personal Voter Data</u>

22.     In less than three days following the release of the Commission Letter, election officials in twenty-four states said that they would oppose, partiallly or fully, the demand for personal voter data.[13]

23.     California Secretary of State Alex Padilla stated that he would "not provide sensitive voter information to a committee that has already inaccurately passed judgment that millions of Californians voted illegally. California's participation would only serve to legitimize the false and already debunked claims of massive voter fraud."[14]

---

[10] *Id.* at 2.
[11] *Id.*
[12] Screenshot: Google Chrome Security Warning for Safe Access File Exchange ("SAFE") Site (July 3, 2017 12:02 AM).
[13] Philip Bump & Christopher Ingraham, *Trump Says States Are 'Trying to Hide' Things from His Voter Fraud Commission. Here's What They Actually Say*, Wash. Post (July 1, 2017), https://www.washingtonpost.com/news/wonk/wp/2017/07/01/trump-says-states-are-trying-to-hide-things-from-his-voter-fraud-commission-heres-what-they-actually-say/.
[14] Press Release, Secretary of State Alex Padilla Responds to Presidential Election Commission Request for Personal Data of California Voters (June 29, 2017), http://www.sos.ca.gov/administration/news-releases-and-advisories/2017-news-releases-and-advisories/secretary-state-alex-padilla-responds-presidential-election-commission-request-personal-data-california-voters/.

24.     Kentucky Secretary of State Alison Lundergan Grimes stated that "Kentucky w[ould] not aid a commission that is at best a waste of taxpayer money and at worst an attempt to legitimize voter suppression efforts across the country."[15]

25.     Virginia Governor Terry McAuliffe stated that he had "no intention of honoring [Kobach's] request."[16]

26.     More than fifty experts in voting technology and twenty privacy organizations wrote to state election officials to warn that "[t]here is no indication how the information will be used, who will have access to it, or what safeguards will be established."[17]

### The Commission's Failure to Conduct a Privacy Impact Assessment

27.     Under the E-Government Act of 2002,[18] any agency "initiating a new collection of information that (I) will be collected, maintained, or disseminated using information technology; and (II) includes any information in an identifiable form permitting the physical or online contacting of a specific individual" is required to complete a Privacy Impact Assessment ("PIA") before initiating such collection.[19]

28.     The agency must "(i) conduct a privacy impact assessment; (ii) ensure the review of the privacy impact assessment by the Chief Information Officer, or equivalent official, as determined by the head of the agency; and (iii) if practicable, after completion of the review under clause

---

[15] Bradford Queen, Secretary Grimes Statement on Presidential Election Commission's Request for Voters' Personal Information, Kentucky (last accessed July 3, 2017) http://kentucky.gov/Pages/Activity-stream.aspx?n=SOS&prId=129.
[16] Terry McAuliffe, *Governor McAuliffe Statement on Request from Trump Elections Commission* (June 29, 2017), https://governor.virginia.gov/newsroom/newsarticle?articleId=20595.
[17] Letter from EPIC et al. to Nat'l Ass'n of State Sec'ys (July 3, 2017), https://epic.org/privacy/voting/pacei/Voter-Privacy-letter-to-NASS-07032017.pdf.
[18] Pub. L. 107–347, 116 Stat. 2899 (codified as amended at 44 U.S.C. § 3501 note).
[19] 44 U.S.C. § 3501 note ("Privacy Impact Assessments").

(ii), make the privacy impact assessment publicly available through the website of the agency, publication in the Federal Register, or other means."[20]

29.     The PACEI is an agency subject to the E-Government Act because it is an "establishment in the executive branch of the Government," a category which "includ[es] the Executive Office of the President."[21]

30.     A Privacy Impact Assessment for a "new collection of information" must be "commensurate with the size of the information system being assessed, the sensitivity of information that is in an identifiable form in that system, and the risk of harm from unauthorized release of that information."[22] The PIA must specifically address "(I) what information is to be collected; (II) why the information is being collected; (III) the intended use of the agency of the information; (IV) with whom the information will be shared; (V) what notice or opportunities for consent would be provided to individuals regarding what information is collected and how that information is shared; [and] (VI) how the information will be secured . . . ."[23]

31.     Under the FACA, "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by [an] advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist."[24]

32.     The Commission has not conducted a Privacy Impact Assessment for its collection of state voter data.

---

[20] *Id.*
[21] 44 U.S.C. § 3502(1).
[22] § 3501 note ("Privacy Impact Assessments").
[23] *Id.*
[24] 5 U.S.C. app. 2 § 10(b).

33.     The Commission has not ensured review of a PIA by any Chief Information Officer or equivalent official.

34.     The Commission has not published a PIA or made such an assessment available for public inspection.

## Count I

### Violation of APA: Unlawful Agency Action

35.     Plaintiff asserts and incorporates by reference paragraphs 1–35.

36.     Defendants' collection of state voter data prior to creating, reviewing, and publishing a Privacy Impact Assessment, 44 U.S.C. § 3501 note, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(a) and short of statutory right under 5 U.S.C. § 706(2)(c).

37.     Defendants' decision to initiate collection of voter data is a final agency action within the meaning of 5 U.S.C. § 704.

38.     Plaintiff, by itself and as a representative of its members, is adversely affected and aggrieved by Defendants' actions.

39.     Plaintiff has exhausted all applicable administrative remedies.

## Count II

### Violation of APA: Agency Action Unlawfully Withheld

40.     Plaintiff asserts and incorporates by reference paragraphs 1–35.

41.     Defendants have failed to create, review, and/or publish a privacy impact assessment for Defendants' collection of voter data, as required by 44 U.S.C. § 3501 note and 5 U.S.C. app. 2 § 10(b).

42.     Defendants' failure to take these steps constitutes agency action unlawfully withheld or unreasonably delayed in violation of 5 U.S.C. § 706(1).

43.     Plaintiff, by itself and as a representative of its members, is adversely affected and aggrieved by Defendants' actions and inaction.

44.     Plaintiff has exhausted all applicable administrative remedies.

## Count III

### Violation of FACA: Failure to Make Documents Available for Public Inspection

45.     Plaintiff asserts and incorporates by reference paragraphs 1–35.

46.     Defendant PACEI has failed to make available for public inspection a privacy impact assessment for the PACEI's collection of voter data.

47.     Defendant PACEI's failure to do so is a violation of 5 U.S.C. app. 2 § 10(b).

48.     Plaintiff, by itself and as a representative of its members, is adversely affected and aggrieved by Defendant PACEI's actions and inaction.

49.     Plaintiff has exhausted all applicable administrative remedies.

## Count IV

### Violation of Fifth Amendment: Substantive Due Process/Right to Informational Privacy

50.     Plaintiff asserts and incorporates by reference paragraphs 1–35.

51.     Defendants, by seeking to assemble an unnecessary and excessive federal database of sensitive voter data from state records systems, have violated the informational privacy rights of millions of Americans, including members of the EPIC Advisory Board, guaranteed by the Due Process Clause of the Fifth Amendment. *See* U.S. Const. amend. V; *NASA v. Nelson*, 562 U.S. 134, 138 (2011); *Nixon v. Administrator of General Services*, 433 U.S. 425, 457 (1977); *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977).

52.     Plaintiff, as a representative of its members, is adversely affected and aggrieved by Defendants' actions.

## Count V

### Violation of Fifth Amendment: Procedural Due Process

53.     Plaintiff asserts and incorporates by reference paragraphs 1–35.

54.     Defendants, by seeking to assemble an unnecessary and excessive federal database of sensitive voter data from state records systems, have deprived EPIC's members of their liberty interest in avoiding the disclosure of personal matters. U.S. Const. amend. V; *NASA v. Nelson*, 562 U.S. 134, 138 (2011); *Nixon v. Administrator of General Services*, 433 U.S. 425, 457 (1977); *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977).

55.     Defendants have done so without providing notice to EPIC's members, without providing EPIC's members an opportunity to challenge the collection of their personal data, and without providing for a neutral decisionmaker to decide on any such challenges brought by EPIC's members.

56.     Defendants have violated EPIC's members Fifth Amendment right to due process of law. U.S. Const. amend. V.

57.     Plaintiff, as a representative of its members, is adversely affected and aggrieved by Defendants' actions and inaction.

### Requested Relief

WHEREFORE, Plaintiff requests that this Court:

    A.  Hold unlawful and set aside Defendants' authority to collect personal voter data from the states;

    B.  Order Defendants to halt collection of personal voter data;

C. Order Defendants to securely delete and properly disgorge any personal voter data

    collected or subsequently received;

D. Order Defendants to promptly conduct a privacy impact assessment prior to the collection

    of personal voter data;

E. Award EPIC costs and reasonable attorney's fees incurred in this action; and

F. Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ Marc Rotenberg
MARC ROTENBERG, D.C. Bar # 422825
EPIC President and Executive Director

ALAN BUTLER, D.C. Bar # 1012128
EPIC Senior Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: July 3, 2017

## LIST OF EXHIBITS

**Exhibit 1**         Exec. Order. No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017)

**Exhibit 2**         Press Release, Office of the Vice President, Readout of the Vice
President's Call with the Presidential Advisory Commission on
Election Integrity (June 28, 2017)

**Exhibit 3**         Letter from Kris Kobach, Vice Chair, Presidential Advisory
Commission on Election Integrity, to Elaine Marshall, Secretary of
State, North Carolina (June 28, 2017)

**Exhibit 4**         Screenshot: Google Chrome Security Warning for Safe Access File
Exchange ("SAFE") Website (July 3, 2017 12:02 AM)

# Exhibit 1


Federal Register

Vol. 82, No. 93

Tuesday, May 16, 2017

# Presidential Documents

Title 3—

The President

Executive Order 13799 of May 11, 2017

## Establishment of Presidential Advisory Commission on Election Integrity

By the authority vested in me as President by the Constitution and the laws of the United States of America, and in order to promote fair and honest Federal elections, it is hereby ordered as follows:

**Section 1.** *Establishment.* The Presidential Advisory Commission on Election Integrity (Commission) is hereby established.

**Sec. 2.** *Membership.* The Vice President shall chair the Commission, which shall be composed of not more than 15 additional members. The President shall appoint the additional members, who shall include individuals with knowledge and experience in elections, election management, election fraud detection, and voter integrity efforts, and any other individuals with knowledge or experience that the President determines to be of value to the Commission. The Vice President may select a Vice Chair of the Commission from among the members appointed by the President.

**Sec. 3.** *Mission.* The Commission shall, consistent with applicable law, study the registration and voting processes used in Federal elections. The Commission shall be solely advisory and shall submit a report to the President that identifies the following:

(a) those laws, rules, policies, activities, strategies, and practices that enhance the American people's confidence in the integrity of the voting processes used in Federal elections;

(b) those laws, rules, policies, activities, strategies, and practices that undermine the American people's confidence in the integrity of the voting processes used in Federal elections; and

(c) those vulnerabilities in voting systems and practices used for Federal elections that could lead to improper voter registrations and improper voting, including fraudulent voter registrations and fraudulent voting.

**Sec. 4.** *Definitions.* For purposes of this order:

(a) The term "improper voter registration" means any situation where an individual who does not possess the legal right to vote in a jurisdiction is included as an eligible voter on that jurisdiction's voter list, regardless of the state of mind or intent of such individual.

(b) The term "improper voting" means the act of an individual casting a non-provisional ballot in a jurisdiction in which that individual is ineligible to vote, or the act of an individual casting a ballot in multiple jurisdictions, regardless of the state of mind or intent of that individual.

(c) The term "fraudulent voter registration" means any situation where an individual knowingly and intentionally takes steps to add ineligible individuals to voter lists.

(d) The term "fraudulent voting" means the act of casting a non-provisional ballot or multiple ballots with knowledge that casting the ballot or ballots is illegal.

**Sec. 5.** *Administration.* The Commission shall hold public meetings and engage with Federal, State, and local officials, and election law experts, as necessary, to carry out its mission. The Commission shall be informed by, and shall strive to avoid duplicating, the efforts of existing government entities. The Commission shall have staff to provide support for its functions.

**Sec. 6.** *Termination.* The Commission shall terminate 30 days after it submits its report to the President.

**Sec. 7.** *General Provisions.* (a) To the extent permitted by law, and subject to the availability of appropriations, the General Services Administration shall provide the Commission with such administrative services, funds, facilities, staff, equipment, and other support services as may be necessary to carry out its mission on a reimbursable basis.

(b) Relevant executive departments and agencies shall endeavor to cooperate with the Commission.

(c) Insofar as the Federal Advisory Committee Act, as amended (5 U.S.C. App.) (the ''Act''), may apply to the Commission, any functions of the President under that Act, except for those in section 6 of the Act, shall be performed by the Administrator of General Services.

(d) Members of the Commission shall serve without any additional compensation for their work on the Commission, but shall be allowed travel expenses, including per diem in lieu of subsistence, to the extent permitted by law for persons serving intermittently in the Government service (5 U.S.C. 5701–5707).

(e) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(f) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(g) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

THE WHITE HOUSE,
*May 11, 2017.*

[FR Doc. 2017–10003

Filed 5–15–17; 8:45 am]

Billing code 3295–F7–P

# Exhibit 2



*the WHITE HOUSE*



## From the Press Office

Speeches & Remarks

Press Briefings

**Statements & Releases**

Nominations & Appointments

Presidential Actions

Legislation

Disclosures

**The White House**
Office of the Vice President

For Immediate Release                                June 28, 2017

# Readout of the Vice President's Call with the Presidential Advisory Commission on Election Integrity

This morning, Vice President Mike Pence held an organizational call with members of the Presidential Advisory Commission on Election Integrity. The Vice President reiterated President Trump's charge to the commission with producing a set of recommendations to increase the American people's confidence in the integrity of our election systems.

"The integrity of the vote is a foundation of our democracy; this bipartisan commission will review ways to strengthen that integrity in order to protect and preserve the principle of one person, one vote," the Vice President told commission members today.

The commission set July 19 as its first meeting, which will take place in Washington, D.C.

Vice Chair of the Commission and Kansas Secretary of State Kris Kobach told members a letter will be sent today to the 50 states and District of Columbia on behalf of the Commission requesting publicly-available data from state voter rolls and feedback on how to improve election integrity.



**HOME**    **BRIEFING ROOM**    **ISSUES**    **THE ADMINISTRATION**    **PARTICIPATE**    **1600 PENN**

USA.gov  |  Privacy Policy  |  Copyright Policy

# Exhibit 3

## Presidential Advisory Commission on Election Integrity

June 28, 2017

The Honorable Elaine Marshall
Secretary of State
PO Box 29622
Raleigh, NC 27626-0622

Dear Secretary Marshall,

I serve as the Vice Chair for the Presidential Advisory Commission on Election Integrity ("Commission"), which was formed pursuant to Executive Order 13799 of May 11, 2017. The Commission is charged with studying the registration and voting processes used in federal elections and submitting a report to the President of the United States that identifies laws, rules, policies, activities, strategies, and practices that enhance or undermine the American people's confidence in the integrity of federal elections processes.

As the Commission begins it work, I invite you to contribute your views and recommendations throughout this process. In particular:

1. What changes, if any, to federal election laws would you recommend to enhance the integrity of federal elections?
2. How can the Commission support state and local election administrators with regard to information technology security and vulnerabilities?
3. What laws, policies, or other issues hinder your ability to ensure the integrity of elections you administer?
4. What evidence or information do you have regarding instances of voter fraud or registration fraud in your state?
5. What convictions for election-related crimes have occurred in your state since the November 2000 federal election?
6. What recommendations do you have for preventing voter intimidation or disenfranchisement?
7. What other issues do you believe the Commission should consider?

In addition, in order for the Commission to fully analyze vulnerabilities and issues related to voter registration and voting, I am requesting that you provide to the Commission the publicly-available voter roll data for North Carolina, including, if publicly available under the laws of your state, the full first and last names of all registrants, middle names or initials if available, addresses, dates of birth, political party (if recorded in your state), last four digits of social

security number if available, voter history (elections voted in) from 2006 onward, active/inactive status, cancelled status, information regarding any felony convictions, information regarding voter registration in another state, information regarding military status, and overseas citizen information.

You may submit your responses electronically to ElectionIntegrityStaff@ovp.eop.gov or by utilizing the Safe Access File Exchange ("SAFE"), which is a secure FTP site the federal government uses for transferring large data files. You can access the SAFE site at https://safe.amrdec.army.mil/safe/Welcome.aspx. We would appreciate a response by July 14, 2017. Please be aware that any documents that are submitted to the full Commission will also be made available to the public. If you have any questions, please contact Commission staff at the same email address.

On behalf of my fellow commissioners, I also want to acknowledge your important leadership role in administering the elections within your state and the importance of state-level authority in our federalist system. It is crucial for the Commission to consider your input as it collects data and identifies areas of opportunity to increase the integrity of our election systems.

I look forward to hearing from you and working with you in the months ahead.

Sincerely,

Kris W. Kobach
Vice Chair
Presidential Advisory Commission on Election Integrity

# Exhibit 4





# Your connection is not private

Attackers might be trying to steal your information from **safe.amrdec.army.mil** (for example, passwords, messages, or credit cards). NET::ERR_CERT_AUTHORITY_INVALID

☐ Automatically send some <u>system information and page content</u> to Google to help detect dangerous apps and sites. <u>Privacy policy</u>



**Back to safety**