## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br><br>    Plaintiff,<br><br>    v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON<br>ELECTION INTEGRITY, *et al.*<br><br>    Defendants. | Civ. Action No. 17-1320 (CKK) |

### PLAINTIFF'S RESPONSE TO THE COURT'S JULY 10, 2017 ORDER

In the Order of July 10, 2017, the Court asked Plaintiff to indicate "how they intend to proceed in this matter." EPIC intends to amend its complaint, naming the Director of the White House Information Technology as an additional Co-defendant. EPIC intends to indicate in the amended complaint how the representations contained in Defendants' response and declaration of July 10, 2017, further support the relief EPIC seeks.

The Commission may not play "hide the ball" with the nation's voter records. With such vast demands for personal information come commensurate responsibilities to provide security and privacy, and to comply with all legal obligations. Surely that is fundamental for an organization charged with promoting "election integrity."

Given the facts alleged in EPIC's complaint, the arguments presented in EPIC's motion and subsequent filings, the facts conceded by the Commission, the facts established in the exhibits, the facts and arguments put forward by the Commission, and the representations made in the Commission's supplemental brief, it is clear that EPIC has established (1) a substantial

likelihood of success on the merits, (2) that it would suffer irreparable harm absent injunctive relief, (3) that the balance of the equities favors relief, and (4) that the public interest favors relief.

The Court should now enter a temporary restraining order and, following any further briefing as the Court deems necessary, enter a preliminary injunction pending final resolution of EPIC's claims.

<u>Summary of the Matter</u>

1. Following a letter sent by the Vice Chair of the Commission ("Kobach") to all 50 states and the District of Columbia seeking the production of detailed voter information, otherwise protected by state privacy law, EPIC filed its complaint for injunctive relief and emergency motion for a temporary restraining order on July 3, 2017. ECF Nos. 1, 3. EPIC alleged that "Defendants' collection of state voter data prior to creating, reviewing, and publishing a Privacy Impact Assessment" was unlawful under the E-Government Act, the APA, and the FACA. Compl. ¶¶ 36, 46. EPIC also alleged that that Defendants' collection of sensitive voter data would "violate the informational privacy rights of millions of Americans," including EPIC's members who are registered voters, and that failure to provide any notice or opportunity to challenge this collection violated their constitutional right to procedural due process. Compl. ¶¶ 51, 54.

2. In the July 5, 2017, opposition to EPIC's motion, Kobach provided details about the intended use of the data and operational assignments for the Commission that further underscored the need for entry of a temporary restraining order.

    a.  In the first declaration, Kobach stated that he "intended that the states use" the File Exchange system operated by the Department of Defense to transfer "voter roll data" to the Commission, despite the fact that his letter instructed the states to "submit [their] responses electronically to ElectionIntegrityStaff@ovp.eop.gov" or via the File Exchange system. First Kobach Decl. ¶ 5.

    b.  Kobach stated that the Commission intends to make a "public release of documents" based on the voter roll data. First Kobach Decl. ¶ 5.

    c.  Kobach stated that the Commission "intends to maintain the data on the White House computer system." First Kobach Decl. ¶ 5.

3.  Prior to the July 7, 2017, hearing, EPIC filed a notice of supplemental exhibits relevant to the questions raised in the Court's July 6, 2017, Order. Pl.'s Notice, ECF No. 20. Supplemental Exhibit 5 showed that the Department of Defense file exchange system referenced in the Vice Chair's letter and declarations was not approved to be used to "collect, maintain, use, and/or disseminate PII about . . . members of the general public." Supp. Ex. 5, ECF No. 20-1.

4.  At the July 7, 2017, hearing, the Commission revealed for the first time that voter data had already been submitted from the State of Arkansas via the Department of Defense file exchange system. TRO Hr'g Tr. 41, July 7, 2017. Counsel for the Commission was unable to provide any details at the hearing concerning where the voter data would be stored, whether it would be secured, and what government entities would be involved in the collection and storage of the data. Hr'g Tr. 33–36.

<u>Significance of Defendant's July 10, 2017, Response</u>

5.   The July 10, 2017, Response concedes three key points that support EPIC's

Motion for a TRO.

    a.   First, the Commission states that it "no longer intends to use the DOD

        SAFE system to receive information from the states . . . ." Def.'s Supp. Br.

        ¶ 1.a, ECF No. 24.

    b.   Second, the Commission states that it has "sent the states a follow-up

        communication requesting the states not submit any data until Court rules

        on plaintiff's TRO motion." Def.'s Supp. Br. ¶ 1.b.

    c.   Third, the Commission states that "it will not download the data that

        Arkansas has already transmitted to SAFE and this data will be deleted

        from this site." Def.'s Supp. Br. ¶ 1.a, ECF No. 24.

6.   However, the July 10, 2017, Response raises new concerns

    a.   The Commission stated it "intends instead to use alternative means of

        receiving the information." Def.'s Supp. Br. ¶ 1.a, ECF No. 24.

    b.   The Commission stated that an agency official "is repurposing an existing

        system" to collect the data. The Commission claimed that "[t]he system is

        anticipated to be fully functional by 6:00 pm EDT today [July 10, 2017]."

        Def.'s Supp. Br. ¶ 1.a.

    c.   The Commission did not provide any indication it would complete a

        Privacy Impact Assessment prior to a subsequent request for data from the

        states.

    d.   The Commission did not provide any indication it would publish the Privacy Impact Assessment pursuant to the FACA.

    e.   The Commission did not explain how it could delegate White House personnel to manage the facilities for the Commission when both the Executive Order and the Commission Charter make clear that the General Services Administration ("GSA") is the "agency responsible" for this function.

7.   If the private voter data were collected and stored within a system controlled by the Director of White House Information Technology, the collection would still be unlawful under the APA and the E-Government Act.

    a.   White House components, including the Director of White House Information Technology, are subject to the APA and the requirements of the E-Government Act.

    b.   The Executive Office of the President ("EOP") and subcomponents of the EOP are agencies for the purposes of the APA. *E.g.*, *Pub. Citizen v. U.S. Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993) ("Public Citizen must rest its claim for judicial review [of U.S. Trade Representative's Action] on the Administrative Procedure Act."); *Armstrong v. Bush*, 924 F.2d 282, 291 (D.C. Cir. 1991) ("[W]e find that there is APA review of the [National Security Council]'s recordkeeping guidelines and instructions . . . ."); *Armstrong v. Exec. Office of the President*, 810 F. Supp. 335, 338 (D.D.C.) (citing *Armstrong*, 924 F.2d at 291–293) ("The Court of Appeals . . . approved of this Court's holding that the APA

provides for limited review of the adequacy of the NSC's and EOP's recordkeeping guidelines and instructions pursuant to the FRA."); *Soucie v. David*, 448 F.2d 1067, 1075 (D.C. Cir. 1971) ("[T]he [Office of Science and Technology] must be regarded as an agency subject to the APA . . . ."); *Citizens for Responsibility & Ethics in Washington (CREW) v. Exec. Office of President*, 587 F. Supp. 2d 48, 63 (D.D.C. 2008) (holding that the EOP was properly named as a defendant in an APA and Federal Records Act suit).

c.   The cases cited by the Commission are distinguishable: they concern confidential advice to the President, not activities that implicate the concrete privacy interests of registered voters in the United States. *E.g.*, *Meyer v. Bush*, 981 F.2d 1288 (D.C. Cir. 1993); *Armstrong v. Exec. Office of the President*, 90 F.3d 553 (D.C. Cir. 1996). The justification underlying those decisions—enabling certain close aides "to advise and assist the President" without fear that their communications will be publicly disclosed, *Meyer v. Bush*, 981 F.2d 1288 (citing *Armstrong*, 877 F. Supp. at 705–06)—simply does not apply when the Court reviews "action[s] affecting the rights and obligations of individuals . . . ." *Dong v. Smithsonian Inst.*, 125 F.3d 877, 881 (D.C. Cir. 1997) (quoting James O. Freedman, *Administrative Procedure and the Control of Foreign Direct Investment*, 119 U. Pa. L. Rev. 1, 9 (1970)); *see also Armstrong*, 924 at 289 ("The legislative history of the APA indicates that Congress wanted to avoid a formalistic definition of 'agency' that might exclude any authority

within the executive branch that should appropriately be subject to the requirements of the APA."); *Washington Research Project, Inc. v. Dep't of Health, Ed. & Welfare*, 504 F.2d 238, 248 (D.C. Cir. 1974) ("The important consideration is whether [the entity] has any authority in law to make decisions."); *cf. Meyer v. Bush*, 981 F.2d 1288, 1299 (D.C. Cir. 1993) (Wald, J., dissenting) ("[W]e can surmise congressional intent on the definition of an agency to the following extent: It includes establishments within the Executive Office of the President, excepting only the President's 'immediate personal staff' or units whose 'sole function' is to advise and assist the President.").

d.  The Director of White House Information Technology was established in 2015 and has "the primary authority to establish and coordinate the necessary policies and procedures for operating and maintaining the information resources and information systems provided to the President, Vice President, and EOP." Memorandum on Establishing the Director of White House Information Technology and the Executive Committee for Presidential Information Technology § 1, 2015 Daily Comp. Pres. Doc. 185 (Mar. 19, 2015), attached as Ex. 3. This authority includes:

> providing "policy coordination and guidance for, and periodically review[ing], all activities relating to the information resources and information systems provided to the President, Vice President, and EOP by the Community, including expenditures for, and procurement of, information resources and information systems by the Community. Such activities shall be subject to the Director's coordination, guidance, and review in order to ensure consistency with the Director's strategy and to strengthen the quality of the Community's decisions

> through integrated analysis, planning, budgeting, and evaluating process.

*Id.* § 2(c). The Director may also "advise and confer with appropriate executive departments and agencies, individuals, and other entities as necessary to perform the Director's duties under this memorandum." § 2(d).

e. The Director has the independent authority to oversee and "provide the necessary advice, coordination, and guidance to" the Executive Committee for Presidential Information Technology, which "consists of the following officials or their designees: the Assistant to the President for Management and Administration; the Executive Secretary of the National Security Council; the Director of the Office of Administration; the Director of the United States Secret Service; and the Director of the White House Military Office." § 3.

f. In *CREW v. Office of Admin.*, 566 F.3d 219 (D.C. Cir. 2008), the D.C. Circuit held that an EOP component is not an agency under the Freedom of Information Act. That case concerned a *request for agency records*. But the case now before the Court concerns *agency conduct*, reviewable under the APA, *see, e.g., Armstrong*, 924 F.2d at 282, even if it is <u>not</u> an agency under the FOIA, *Armstrong v. Exec. Office of the President*, 90 F.3d 553, 559 (D.C. Cir. 1996).

## Conclusion

8. The Commission has not established that the proposed collection of voter data is in compliance with the law.

    a.  The Commission has not provided any details on which government entities and agencies would operate, control, or otherwise oversee their proposed collection and storage of voter data.

    b.  The Commission has not indicated that it would undertake and publish a Privacy Impact Assessment concerning the collection of sensitive voter data.

    c.  The Commission has conceded that no harm would result from suspending collection of voter data pending the Court's resolution of EPIC's motion. The Commission has failed to identify any harm that could result from suspending collection of voter data pending the Court's resolution of this case.

    d.  The GSA, not the Department of Defense or the White House, is the "Agency Responsible for Providing Support" to the Commission, including "administrative services, funds, facilities, staff, equipment, and other support services." Executive Order, § 7(A); Commission Charter, § 6.

    e.  The Commission is authorized only to "study" election integrity, not to undertake an investigation or gather voter data from all Americans. Executive Order, § 3; Commission Charter, § 3.

9.  The Court should not permit the Commission to evade judicial review by using non-GSA facilities.

    a.  To the extent that the Commission might evade the E-Government Act's PIA requirement by using non-GSA facilities to collect voter data, EPIC

would face certain informational injury due to the non-disclosure of a PIA.

The Court must hold such action unlawful and restrain it.

b.  The President's Executive Order and the Commission's Charter clearly

establish that the GSA "shall provide the Commission with such

administrative services, funds, facilities, staff, equipment, and other

support services as may be necessary to carry out its mission . . . ." Exec.

Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017).

Respectfully Submitted,

/s/ Marc Rotenberg
Marc Rotenberg, D.C. Bar # 422825
EPIC President and Executive Director

Alan Butler, D.C. Bar # 1012128
EPIC Senior Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: July 11, 2017