IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br><br>    Plaintiff,<br><br>    v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al.*,<br><br>    Defendants. | Civ. Action No. 17-1320 (CKK) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING APPEAL, OR IN THE ALTERNATIVE, FOR ADDITIONAL TIME TO RESPOND TO THE SECOND AMENDED COMPLAINT**

Plaintiff respectfully asks this Court to deny Defendants' "Motion to Stay Proceedings Pending Appeal, or in the Alternative, for Additional Time to Respond to the Second Amended Complaint." EPIC intends to pursue issues before this Court that were neither raised on appeal nor will be addressed by the Court of Appeals for the D.C. Circuit. EPIC also intends to move for jurisdictional discovery. Defendants' proposed stay would unnecessarily postpone this process and prolong the Court's resolution of claims in this case. Moreover, the Presidential Advisory Commission on Election Integrity ("Commission") continues to gather state voter data—and possibly personal data from other federal agencies—without a required Privacy Impact Assessment. Further delay of the District Court proceedings presents the risk of an ongoing harm. Finally, Defendants waited until after EPIC filed its opening brief with the Court of Appeals to file a motion to stay proceedings in this Court, prejudicing EPIC's ability to pursue its claims. The Commission's motion should be denied, or in the alternative, a stay of proceedings, limited to only the issues raised on appeal, could be granted.

"[A] party requesting a stay of proceedings 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Wrenn v. District of Columbia*, 179 F. Supp. 3d 135, 137 (D.D.C. 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). As the movants, Defendants have the "burden . . . to justify a stay" and to "show that it is proper to deviate from the normal course of the litigation process at this moment." *Id.* at 140.

EPIC agrees that the Court could stay briefing of dispositive motions with respect to the issues currently on appeal to the D.C. Circuit. But Defendants' proposed stay of *all* proceedings cannot be justified. There are multiple claims and issues before this Court unrelated to EPIC's appeal that should be dealt with in "the normal course of the litigation process." *Wrenn*, 179 F. Supp. 3d at 140. EPIC's appeal is limited solely to (1) whether the interpretation of "agency" in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971) controls the meaning of "agency" under the APA, 5 U.S.C. § 701; (2) whether the Presidential Advisory Commission on Election Integrity, the Director of White House Information Technology ("D-WHIT"), and the Executive Office of the President ("EOP") are "agencies" subject to judicial review under the APA; and (3) whether the General Services Administration has a nondiscretionary obligation to facilitate the Commission's collection of data under the terms of the Executive Order and the Commission Charter. These issues are entirely unconnected to EPIC's constitutional claims. This Court should refuse to order a stay on issues that are not before the D.C. Circuit and that concern the ongoing conduct of the Commission.

EPIC narrowed the scope of issues on appeal before the D.C. Circuit to those concerning whether the Commission was an "agency" subject to judicial review and whether the General Services Administration had a nondiscretionary obligation to manage the records system under the terms of the Executive Order and the Commission Charter. EPIC purposefully did not raise any issues requiring additional fact-finding, presuming that it would have the opportunity to pursue these matters as the District Court proceedings continued. For example, in the Memorandum Opinion, this Court stated:

> In the Court's view, however, the present record evidence is insufficient for Plaintiff to satisfy its burden with respect to associational standing. There is no evidence that members are *required* to finance the activities of the organization; that they have any role in electing the leadership of the organization; or that their fortunes, as opposed to their policy viewpoints, are "closely tied" to the organization.

Memorandum Opinion 13, ECF 40. EPIC intends to supplement the record to demonstrate that it does indeed satisfy the necessary elements of functional equivalence to establish associational standing. *See* Second Declaration of Marc Rotenberg, Ex. 1. As this issue requires additional record evidence and it is not raised on appeal, it should properly be considered by the Court.

Moreover, plaintiffs intend to show that the relevant harm analysis is not the risk of improper disclosure of personal data by the Commission but the attempt to gather the personal data absent the Privacy Impact Assessment. That finding requires additional record evidence that EPIC will provide to demonstrate the risk that flows from improper collection of personal data.

A stay of all proceedings is also inappropriate because EPIC intends to move for jurisdictional discovery. For example, though this Court held in July that neither the Commission nor the D-WHIT were agencies "based on the present record," Mem. Op. 30, EPIC will seek discovery to supplement the record and to ascertain the full responsibilities and activities of both entities. *See, e.g.*, *Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, No. 07-964 (CKK), 2008 WL 7077787, at *2 (D.D.C. Feb. 11, 2008) (granting jurisdictional discovery to determine whether the Office of Administration was an agency); *EPIC v. Office of Homeland Security*, No. 02-620 (CKK), at *13 (D.D.C. Dec. 26, 2002) (granting jurisdictional discovery to determine whether the Office of Homeland Security was an agency). Likewise, EPIC intends to move for discovery to determine the states from which the Commission has received, or expects to receive, voter data. This information will inform and clarify EPIC's assertion of associational standing on behalf of its Directors and Advisory Board members, who reside in many different states. EPIC also intends to determine whether the Commission is seeking to obtain personal data from other federal agencies. Finally, EPIC will seek jurisdictional discovery to establish whether the Commission intends to make personal voter data "available for public inspection and

copying" per § 10(b) of the FACA. The Commission argues that it is not an "agency," and thus not subject to the Freedom of Information Act (FOIA). *See* 5 U.S.C. § 552(f). Under that theory, the Commission cannot find any relief from the FACA's records disclosure mandate. § 10(b). The Commission would thus be obligated to make *all* of the personal voter data that it collects available for public inspection—exactly what the Commission promised the Court it would not to do. Mem. Op. 5, 14. EPIC thus seeks to discover, as a factual matter, whether the Commission intends to make personal voter data available for public inspection. A stay would unnecessarily delay this process of jurisdictional discovery, the appropriate scope of which does not depend on any issues raised in EPIC's appeal.

A stay of all proceedings, if granted, would prejudice and "work damage" to EPIC. *Wrenn*, 179 F. Supp. 3d at 137. EPIC has an indisputable interest in the prompt adjudication of its claims, as the Commission's collection of personal voter data presents an active and ongoing threat to voter privacy. *See* Letter from Kris Kobach, Vice Chair, Presidential Advisory Comm'n on Election Integrity, to Alex Padilla, Cal. Sec'y of State (July 26, 2017) ("I write to renew the June 28 request[.]"), Ex. 2. Although this Court declined to issue a preliminary injunction against Defendants, the Court has yet to enter a final decision on the merits of EPIC's claims. Issuing a blanket stay would unnecessarily and unfairly delay that resolution. Moreover, a blanket stay would do nothing to serve judicial economy, as the issues before this Court would still need to be addressed.

Finally, EPIC notes that Defendants filed their motion to stay proceedings after EPIC had filed its opening brief in the D.C. Circuit. Defendants had ample opportunity to raise this issue between the July 25, 2017 Notice of Appeal, ECF No. 42, and EPIC's opening brief deadline of August 18, 2017. But Defendants chose instead to contact EPIC on August 22, 2017—two business day after the appellate brief had been filed—to propose a stay in the District Court proceedings. The timing, determined solely by the Defendants, effectively prejudices EPIC's ability to effectively litigate this matter. *Cf. Cintec Int'l Ltd. v. Parkes*, 468 F. Supp. 2d 77, 79

(D.D.C. 2006) (finding plaintiffs were prejudiced by "willful delays of the defendant"). On this basis alone, the Court should deny the motion.

                Respectfully Submitted,

                /s/ Marc Rotenberg
                MARC ROTENBERG, D.C. Bar # 422825
                EPIC President and Executive Director

                ALAN BUTLER, D.C. Bar # 1012128
                EPIC Senior Counsel

                CAITRIONA FITZGERALD*
                EPIC Policy Director

                JERAMIE D. SCOTT, D.C. Bar # 1025909
                EPIC Domestic Surveillance Project Director

                ELECTRONIC PRIVACY INFORMATION CENTER
                1718 Connecticut Avenue, N.W.
                Suite 200
                Washington, D.C. 20009
                (202) 483-1140 (telephone)
                (202) 483-1248 (facsimile)

                *Attorneys for Plaintiff EPIC*
                * *Appearing pro hac vice*

Dated: September 8, 2017