**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br><br>     Plaintiff,<br><br>     v.<br><br>PRESIDENTIAL ADVISORY COMMISSION ON<br>ELECTION INTEGRITY, et al.<br><br>     Defendants. | Civ. Action No. 17-1320 (CKK) |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT
WITH INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF AUTHORITIES**

**Cases**

*ACLU v. Trump*, No. 17-1351,
2017 WL 3049418 (D.D.C. July 18, 2017) ............................................................................... 13

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016) ................................................................................................... 17

*Ctr. for Biological Diversity v. Tidwell*,
239 F. Supp. 2d 213 (D.C. Cir. 2017) ....................................................................................... 14

*Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*,
No. 17-1354, 2017 WL 3028832 (D.D.C. July 18, 2017) ......................................................... 17

*Mattiaccio v. DHA Grp., Inc.*,
293 F.R.D. 229 (D.D.C. 2013) ................................................................................................... 18

*Nat'l Treasury Emps. Union v. Nixon*,
492 F.2d 587 (D.C. Cir. 1974) ................................................................................................... 17

*Soucie v. David*,
448 F.2d 1067 (D.C. Cir. 1971) ................................................................................................. 15

**Statutes**

5 U.S.C. § 552(a) ............................................................................................................................ 14

5 U.S.C. § 552(b)(6) ....................................................................................................................... 13

5 U.S.C. § 552(f)(1) ........................................................................................................................ 14

5 U.S.C. § 702 .................................................................................................................................. 3

5 U.S.C. §§ 701 *et seq.* ........................................................................................................ 2, 14, 15

E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (codified at 44 U.S.C. § 3501
note) ...................................................................................................................................... 2, 14

Federal Advisory Committee Act, Pub. L. 92–463, 86 Stat. 770 (1972) (codified as amended at 5
U.S.C. app. 2) ............................................................................................................................. 1

5 U.S.C. app. 2 § 7 ...................................................................................................................... 5

5 U.S.C. app. 2 § 8 ............................................................................................................... 1, 4, 5

5 U.S.C. app. 2 § 10 ............................................................................................................. 11, 13

**Regulations**

41 C.F.R. § 102-3.25 ...................................................................................................................... 11

41 C.F.R. § 102-3.70 ...................................................................................................................... 13

41 C.F.R. § 102-3.105 .................................................................................................................... 10

41 C.F.R. § 102-3.115 ...................................................................................................................... 5

41 C.F.R. § 102-3.120 .................................................................................................................... 11

41 C.F.R. § 102-3.175 ...................................................................................................................... 9

*By-Laws and Operating Procedures*, Presidential Advisory Comm'n on Election Integrity (July
19 2017) ............................................................................................................................... 10, 11

Federal Rule of Civil Procedure 15(a)(2) ................................................................................... 1, 18

Local Civil Rule 7(m) ..................................................................................................................... 18

**Other Authorities**

*2017 Current Fiscal Year Report: Review of Federal Advisory Committee*, FACA Database
(Oct. 12, 2017) ............................................................................................................................. 9

*By-Laws and Operating Procedures*, Presidential Advisory Comm'n on Election Integrity (July 19 2017) ................................................................................................................. 10, 11

Document Index, *Lawyers' Comm. for Civil Rights Under Law,* No. 17-1354 (D.D.C. filed Sep. 29, 2017) ............................................................................................... 1, 10, 13, 16

*Document Search*, Federal Register (last visited Oct. 12, 2017) ................................................ 13

Email from Andrew J. Kossack, Assoc. Counsel, Office of the Vice President, to Commission Members (June 26, 2017) ............................................................................................. 12

Exec. Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017) ..................................................... 9

*FACA Database Search Report*, FACA Database (last visited Oct. 12, 2017) ........................... 12

*FACA Database Search Report*, FACA Database (Oct. 3, 2017) ............................................. 6, 8

*FACA Members Report*, FACA Database (last visited Oct. 12, 2017) ...................................... 1, 6

*General Services Administration – Committee List*, FACA Database (last visited Oct. 12, 2017) ................................................................................................................. 8

*General Services Administration*, FACA Database (last visited Oct. 12, 2017) ........................... 4

*GSA - 2612 - Presidential Advisory Commission on Election Integrity*, FACA Database (last visited Oct. 11, 2017) ................................................................................................. 7

James D. Freeman II, Advisory Comm. Mgmt. Officer, Dep't of Def., *Memorandum for Committee Management Secretariat, General Services Administration* (Nov. 11, 2016) .......... 7

James D. Freeman II, Advisory Comm. Mgmt. Officer, Dep't of Def., *Memorandum for Group Federal Officer, Department of the Navy* (Feb. 3, 2017) ............................................... 7

*Presidential Advisory Commission on Election Integrity Resources*, The White House (last visited Oct. 12, 2017) ................................................................................................. 4

Third Decl. of Andrew J. Kossack, *Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, No. 17-1354 (D.D.C. filed Sep. 29, 2017) ............................................................................................... 1, 10, 11, 15

**MOTION AND MEMORANDUM**

Plaintiff hereby moves the Court for leave to file a Third Amended Complaint pursuant to

Federal Rule of Civil Procedure 15(a)(2). In support, Plaintiff states:

1.       Since Plaintiff filed a Seconded Amended Complaint, ECF No. 33, on July 11, 2017, new

facts material to this matter have been revealed.

2.       Some of these facts were disclosed by Defendants less than two weeks ago. *See* Third

Decl. of Andrew J. Kossack, *Lawyers' Comm. for Civil Rights Under Law v. Presidential*

*Advisory Comm'n on Election Integrity*, No. 17-1354 (D.D.C. filed Sep. 29, 2017) ("Third

Kossack Decl."); Document Index, *Lawyers' Comm. for Civil Rights Under Law,* No. 17-1354

(D.D.C. filed Sep. 29, 2017) ("Document Index").

3.       Some of these facts, though material, were omitted from Defendants' briefs and

representations to this Court. In particular, it has come to light that the Presidential Advisory

Commission on Election Integrity ("the Commission") is under the legal authority of M. Virginia

Wills, the Committee Management Officer ("CMO") employed by the General Services

Administration ("GSA"). *FACA Members Report*, FACA Database;[1] *see also infra* ¶¶ 15–22.

Under the Federal Advisory Committee Act, Pub. L. 92–463, 86 Stat. 770 (1972) (codified as

amended at 5 U.S.C. app. 2) ("FACA"), Ms. Wills "must . . . exercise control and supervision

over the establishment, procedures, and accomplishments" of any advisory committee for which

she has been designated, including the Commission. 5 U.S.C. app. 2 § 8 ("Responsibilities of

agency heads; Advisory Committee Management Officer, designation.").

---

[1] https://www.facadatabase.gov/rpt/membersbyagency.asp (specify "GSA" in the "Choose
Agency" field; toggle "Name" under "Sort on"; click the "Members By Agency or Group"
button; then scroll to the far right of the resulting page, where Ms. Wills is listed at the
Commission's CMO) (last visited Oct. 12, 2017).

4.      Moreover, the Commission has now admitted (a) that it is part of and subject to the control of the GSA and (b) that it is part of—or in its own right—an agency. *See infra* ¶¶ 23–41; 43–51.

5.      These facts and admissions contradict prior representations by Defendants upon which this Court has relied. Mem. Op. 28, ECF No. 40 (citing Hr'g Tr. at 27:25–28:6; 30:10–13, ECF No. 22) ("Defendants have represented that the GSA's role is currently expected to be limited to specific 'administrative support like arranging travel for the members' of the Commission, and that no other federal agencies are 'cooperating' with the Commission."). Despite considerable briefing on the question of whether the GSA is obligated to perform any data collection that the Commission undertakes, *see, e.g.*, Mem. Supp. Defs.' Mot. Dismiss 37, ECF No. 49-1, Defendants have at no time disclosed to the Court the existence of a GSA officer with authority over the Commission or otherwise acknowledged that the Commission is under the legal control of the GSA.

6.      Plaintiff thus proposes to amend the Complaint to reflect new material facts, which fall broadly into three categories.

7.      First, EPIC seeks to add new facts which demonstrate that the Commission—contrary to its repeated denial of agency status—is part of and subject to the control of the General Services Administration, an entity which is indisputably an agency. *See, e.g.*, Mem. Supp. Defs.' Mot. Dismiss 37, ECF No. 49 (acknowledging that the GSA is an agency).

8.      These facts would offer the Court an independent basis to subject the Commission's actions to judicial review under 5 U.S.C. §§ 701 *et seq*. and to order the Commission to conduct and publish a Privacy Impact Assessment ("PIA") pursuant to the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (codified at 44 U.S.C. § 3501 note). Moreover, these facts may

allow the Court to resolve EPIC's statutory claims without revisiting the more complex issue of whether the Commission, the Director of White House Information Technology ("D-WHIT"), and the Executive Office of the President ("EOP") are agencies in their own right.

9.      Plaintiff also seeks to amend the complaint to name M. Virginia Wills as a Defendant in her official capacity given her status as the CMO with legal authority over the Commission.

10.     Second, EPIC seeks to add new facts which demonstrate that the Commission considers itself to be an agency or part of an agency. These facts would offer the Court yet another basis to subject the Commission's actions to judicial review and to order the Commission to conduct and publish a PIA.

11.     Third, EPIC seeks to add new facts that further substantiate EPIC's associational standing to bring claims on behalf of EPIC's Members, as outlined in the Declarations filed subsequent to EPIC's Second Amended Complaint. *See* Decl. of Marc Rotenberg, ECF No. 52-1; Decl. of Deborah C. Peel, ECF No. 52-2; Decl. of Helen Nissenbaum, ECF No. 52-3; Decl. of Robert Ellis Smith, ECF No. 52-4.

12.     Finally, Plaintiff seeks to make two other significant changes. First, Plaintiff seeks to amend the complaint to clarify, out of an abundance of caution, that the Court has the authority to order mandamus and declaratory relief in this case even if injunctive relief is not available under 5 U.S.C. § 702. Second, Plaintiff seeks to voluntarily drop the Department of Defense and the United States Digital Service from the Complaint.

13.     If the Court finds it necessary, the Court could order limited supplemental briefing in connection with Defendants' Motion to Dismiss to account for these amendments and any legal issues they raise.

**New Facts Demonstrating that the Commission is Part of, and Under the Control of, the GSA**

14.     New information—some of it disclosed by the Commission less than two weeks ago—demonstrates that the Commission is both part of the GSA and subject to the authority of the GSA.

15.     At some point following the Commission's first meeting on July 19, 2017, the Commission updated its website to list a document provided to the Commission titled "Who's Counting? How Fraudsters and Bureaucrats Put Your Vote at Risk, by John Fund and Hans von Spakovsky." *Presidential Advisory Commission on Election Integrity Resources*, The White House.[2] The Commission communicated that this "copyrighted material" was maintained by an official in the GSA, instructing members of the public to contact "gsa.cmo1@gsa.gov" in order to inspect it:



*Id.*

16.     The email address "gsa.cmo1@gsa.gov" is assigned to the Committee Management Officer of the GSA, who is an employee of that agency. *See General Services Administration, FACA Database.*[3] As of October 12, 2017, the GSA lists M. Virginia Wills as the agency's CMO. *Id.*

---

[2] https://www.whitehouse.gov/presidential-advisory-commission-election-integrity-resources (last visited Oct. 12, 2017).
[3] https://www.facadatabase.gov/agency/agency.aspx?aid=74 (last visited Oct. 12, 2017).

17.     Under the FACA, the CMO is an officer designated by "each agency which has an advisory committee." 5 U.S.C. app. 2 § 8(b). The CMO is granted broad authority over the advisory committees assigned to her. Namely, the CMO "shall . . . **exercise control and supervision over the establishment, procedures, and accomplishments of advisory committees**" assigned to her by the "head of [an] agency"; "assemble and maintain the reports, records, and other papers of any such committee during its existence"; and "carry out, on behalf of that agency, the provisions of section 552 of title 5, United States Code, with respect to such reports, records, and other papers." *Id.* 5 U.S.C. app. 2 § 8(b) (emphasis added).

18.     The Committee Management Secretariat of the GSA, which is "responsible for all matters relating to advisory committees" across the federal government, 5 U.S.C. app. 2 § 7(a), has issued regulations that expand on the CMO's role. Those regulations further charge a CMO with "**carry[ing] out all responsibilities delegated by the agency head**"; "ensur[ing] that section 10(b), 12(a), and 13 of the [FACA] are implemented by the agency to provide for appropriate recordkeeping"; and maintaining "[c]opies of the information provided as the agency's portion of the annual comprehensive review." 41 C.F.R. § 102-3.115 (emphasis added).

19.     By listing the GSA's CMO as the officer to contact in order to obtain Commission records, the Commission has acknowledged that the GSA's CMO is fulfilling the statutory role of "assembl[ing] and maintain[ing] the reports, records, and other papers of [the] committee"—a function reserved by the FACA to the Committee Management Officer who "exercise[s] control and supervision" over the committee. 5 U.S.C. app. 2 § 7(a).

20.     Crucially, the FACA Database[4]—a website maintained by the GSA and populated with information provided by advisory committees—confirms that M. Virginia Wills is the Commission's CMO (screenshot split into two pieces for legibility):

| FACA Members Report   (58  records retrieved) | | | | | | | | | October 5, 2017 5:10:44 PM |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Spreadsheet XML ASCII |
| **Member** | **Member Designation** | **Represented Group** | **Committee Member Fiscal Year** | **Agency Abbr** | **Agency Name** | **Committee Name** | **Subcommittee Name** | **Chairperson** | **Appointment Start Date** |
| Adams, John Christian Mr. | Special Government Employee (SGE) | | 2017 | GSA | General Services Administration | Presidential Advisory Commission on Election Integrity | | No | 7/11/2017 |

| **Appointment End Date** | **Appointment Type** | **Appointment Term** | **Pay Plan** | **Pay Source** | **Occupation Or Affiliation** | **C M O** | **D F O** |
|---|---|---|---|---|---|---|---|
| 7/11/2019 | Presidential | 2 Years | Travel And Per Diem Only | Executive Branch | Election Law Attorney, Public Interest Legal Foundation | M. Virginia Wills TBD gsa.cmo1@gsa.gov | Andrew Kossack 2024563794 ElectionIntegrityStaff@ovp.eop.gov |

*FACA Members Report*, FACA Database.[5]

21.     Moreover, Ms. Wills edited the Commission's FACA Database entry on Aug. 2, 2017:

| **Last Updated** | **Created At** | **Created By** | **Changed At** | **Changed By** |
|---|---|---|---|---|
| 9/18/2017 3:00:36 PM | 5/13/2017 2:36:50 PM | audrey.brooks@gsa.gov 202-205-5912 Audrey Brooks GSA\ CMO | 8/2/2017 4:20:57 PM | gsa.cmo1@gsa.gov TBD Virginia Wills \ CMS |

*FACA Database Search Report*, FACA Database (Oct. 3, 2017).[6] Audrey Brooks, a prior GSA CMO, is also identified as having created the Commission's entry. *Id.*

---

[4] https://www.facadatabase.gov/.
[5] https://www.facadatabase.gov/rpt/membersbyagency.asp (specify "GSA" in the "Choose Agency" field; toggle "Name" under "Sort on"; click the "Members By Agency or Group" button; then scroll to the far right of the resulting page, where Ms. Wills is listed at the Commission's CMO) (last visited Oct. 12, 2017).

22.     Placing a presidential advisory committee under the control and supervision of an agency CMO is consistent with the practice used for other advisory committees. For instance, the United States Military Academy Board of Visitors and the United States Naval Academy Board of Visitors—both listed by the GSA as presidential advisory committees—are assigned to the Department of Defense's CMO.[7] *See* James D. Freeman II, Advisory Comm. Mgmt. Officer, Dep't of Def., *Memorandum for Committee Management Secretariat, General Services Administration* (Nov. 11, 2016);[8] James D. Freeman II, Advisory Comm. Mgmt. Officer, Dep't of Def., *Memorandum for Group Federal Officer, Department of the Navy* (Feb. 3, 2017).[9]

23.     The fact that the Commission operates under the authority of the GSA is corroborated by multiple GSA and Commission records.

24.     For example, the Commission's "agency" is listed as the "General Services Administration" in at least four different records found in the FACA Database. First, the "General Information" page for the Commission identifies the GSA as the Commission's "Official Agency":

| | | |
|---|---|---|
| Agency: | General Services Administration | *Official Agency Name* |
| Committee Name: | Presidential Advisory Commission on Election Integrity | *Official Committee Name* |
| Committee No: | 2612 | *Committee Number - Assigned by Committee Management Secretariat* |
| Fiscal Year: | 2017 | *This information applies to this Fiscal Year.* |
| Original Establishment Date: | 6/23/2017 | *This is the date that the committee was originally established, if known and documented.* |

---

[6] The excerpted screenshot is what the FACA Database displayed as of October 3, 2017 (with a red oval added for emphasis). The same page now lists "Andrew Kossack GSA\Presidential Advisory Commission on Election Integrity\ DFO" as having made the most recent change to the Commission's database entry (on October 4, 2017).

[7] *Id.*

[8] https://www.facadatabase.gov/download.aspx?fn=Charters/75_2016.11.16_ACMO-CMS%20Consultation%20Charter%20Renewal%20(2016-2018)_(2016-11-16-02-31-37).pdf.

[9] https://www.facadatabase.gov/download.aspx?fn=Charters/399_2017.02.03_ACMO%20approval%20memo%20(2016-2018%20amendment)_(2017-02-03-08-36-08).pdf.

*GSA - 2612 - Presidential Advisory Commission on Election Integrity*, FACA Database.[10]

25.     Second, a database search for the Commission reveals that the Commission's "Agency Name" is the "General Services Administration":

| Agency Abbr | Agency Name | Committee Fiscal Year | Committee Name | Committee No | Total Committee Member | Committee Report | Committee Meeting Open | Committee Meeting Not Open | Com. Meeti. Total |
|---|---|---|---|---|---|---|---|---|---|
| GSA | General Services Administration | 2017 | Presidential Advisory Commission on Election Integrity | 2612 | 12 | | 2 | | 2 |

**FACA Database Search Report** (2 records retrieved)   October 5, 2017 4:16:32 PM

*FACA Database Search Report*, FACA Database.[11]

26.     Third, the "Committee List" page for the General Services Administration lists the Commission among four GSA advisory committees:

**General Services Administration - Committee List 4 - Available Ceiling 1 - FY 2017**

| Committee Name | Committee# | Last Updated |
|---|---|---|
| Green Building Advisory Committee | 76888 | 10/4/2017 |
| GSA Labor-Management Relations Council | 2514 | 10/4/2017 |
| Presidential Advisory Commission on Election Integrity | 2612 | 10/4/2017 |
| The President's Management Advisory Board | 76701 | 10/4/2017 |

*General Services Administration – Committee List*, FACA Database.[12]

---

[10] https://www.facadatabase.gov/committee/committee.aspx?cid=2612&aid=74 (last visited Oct. 12, 2017).

[11] https://www.facadatabase.gov/rpt/databasesearchcurrent.asp (specify "GSA" as the "Agency Organization"; specify "Yes" under "Presidential"; click "Continue") (last visited Oct. 12, 2017.

[12] https://www.facadatabase.gov/committee/committees.aspx?aid=74 (last visited Oct. 12, 2017).

27.     And finally, the Commission's "2017 Current Year Fiscal Report" lists the "General

Services Administration" as the Commission's "Department or Agency":

### 2017 Current Fiscal Year Report: Review of Federal Advisory Committee

**Report Run Date:** 10/5/2017 4:30:32 PM

| 1. Department or Agency | | | 2. Fiscal Year |
|---|---|---|---|
| **General Services Administration** | | | **2017** |
| 3. Committee or SubCommittee | | | 3b. GSA Committee No. |
| **Presidential Advisory Commission on Election Integrity** | | | **2612** |
| 4. Is this New During Fiscal Year? | 5. Current Charter | 6. Expected Renewal Date | 7. Expected Term Date |
| **Yes** | **6/23/2017** | **6/23/2019** | |

*2017 Current Fiscal Year Report: Review of Federal Advisory Committee*, FACA Database.[13]

28.     According to GSA regulations, the information contained in an advisory committee's

fiscal year report is self-reported by the officials responsible for that committee:

> To conduct an annual comprehensive review of each advisory committee as specified in section 7(b) of the [FACA], GSA requires Federal agencies to report information on each advisory committee for which a charter has been filed in accordance with §102-3.70, and which is in existence during any part of a Federal fiscal year. Committee Management Officers (CMOs), Designated Federal Officers (DFOs), and other responsible agency officials will provide this information by data filed electronically with GSA on a fiscal year basis, using a Governmentwide shared Internet-based system that GSA maintains.

41 C.F.R. § 102-3.175.

29.     It is well established that the GSA is required "provide the Commission with such

administrative services, funds, facilities, staff, equipment, and other support services as may be

necessary to carry out its mission on a reimbursable basis" and to perform "any functions of the

President under [the FACA], except for those in section 6 of the Act[.]" Exec. Order No. 13,799,

82 Fed. Reg. 22,389 (May 11, 2017). But the Commission has now admitted through its website

and submissions to the GSA that it is actually part of—and thus subject to the control of—the

GSA.

---

[13] https://www.facadatabase.gov/rpt/rptannualreport_sms.asp?cid=2612&uid= (last visited Oct. 12, 2017).

30.     Moreover, the Commission has repeatedly confirmed its subordinate relationship to the GSA through its actions and public statements.

31.     At the Commission's first meeting on July 19, 2017, the Commission adopted a set of by-laws. *By-Laws and Operating Procedures*, Presidential Advisory Comm'n on Election Integrity (July 19 2017)[14] ("By-laws"). The By-laws state that the "Designated Federal Officer ("DFO")" of the Commission "will be a full-time officer or employee of the Federal Government **appointed by the GSA Administrator, pursuant to 41 CFR § 102-3.105** and in consultation with the Chair of the Commission." *Id.* at 1 (emphasis added).

32.     Under the regulation cited by the Commission's By-laws—41 C.F.R. § 102-3.105—the only official with the authority to appoint a DFO for an advisory committee is "[t]he head of each agency that establishes or utilizes" that advisory committee. That same agency head must also "[d]esignate a Committee Management Officer (CMO)" for the advisory committee, among other duties. *Id.*

33.     As the Commission's By-laws clearly dictate, "[t]he head of . . . agency that establishes or utilizes" the Commission is the GSA Administrator. 41 C.F.R. § 102-3.105. The Commission thus concedes that the GSA Administrator is the "head of . . . [the] agency" that sits above the Commission.

34.     The GSA Administrator, in his role as the "[t]he head of . . . agency that establishes or utilizes" the Commission, *id.*, has appointed Andrew J. Kossack as the Commission's DFO. *See* Third Kossack Decl. 1 ("I am the . . .  Designated Federal Officer for the Presidential Advisory Commission on Election Integrity[.]"); Document Index 36 (listing "Email about Kossack's

---

[14] *Available at* https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/pacei-bylaws_final.PDF.

appointment as Designated Federal Officer" and "Email about role of Designated Federal

Officer" as originating from the GSA).

35.     The By-laws, consistent with the requirements of the FACA, invest Mr. Kossack with

significant authority over the Commission's activities:

> The DFO will approve or call all Commission meetings, prepare all meeting
> agendas, attend all meetings, and adjourn any meeting when the DFO determines
> adjournment to be in the public interest. Should the Chair designate any
> subcommittees, the DFO will similarly approve or call all subcommittee
> meetings, prepare all subcommittee meeting agendas, attend all subcommittee
> meetings, and adjourn any subcommittee meeting when the DFO determines
> adjournment to be in the public interest. In the DFO's discretion, the DFO may
> utilize other Federal employees as support staff to assist the DFO in fulfilling
> these responsibilities.

*Id.* at 1-2; *see also* 5 U.S.C. app. 2 § 10(e) ("The [Designated Federal Officer] is authorized,

whenever he determines it to be in the public interest, to adjourn any [meeting of the advisory

committee]. No advisory committee shall conduct any meeting in the absence of that officer or

employee."); Third Kossack Decl. 1 (identifying Mr. Kossack as the "Executive Director" of the

Commission).

36.     Mr. Kossack's oversight of the Commission is subject to the GSA Administrator's

control. *E.g.*, 41 C.F.R. § 102-3.120 ("[T]he DFO for each advisory committee . . . must . . .

[c]hair the meeting when so directed by the agency head**.**").

37.     Mr. Kossack's oversight of the Commission is also subject to the control of the GSA

Committee Management Officer. 41 C.F.R. § 102-3.25 ("'Designated Federal Officer ('DFO')' ,

means an individual designated by the agency head, for each advisory committee for which the

agency head is responsible, to implement the provisions of section 10(e) and (f) of the Act and

any advisory committee procedures of the agency under the control and supervision of the

CMO."). As noted, the GSA CMO reports to the GSA Administrator. *Supra* ¶ 18.

38.    Mr. Kossack, though himself an employee of the Office of the Vice President, is also affiliated with the GSA in the FACA Database:

| Last Updated | Created At | Created By | Changed At | Changed By |
|---|---|---|---|---|
| 10/4/2017 4:20:18 PM | 5/13/2017 2:36:50 PM | audrey.brooks@gsa.gov 202-205-5912 Audrey Brooks GSA\ CMO | 10/4/2017 4:20:18 PM | Andrew.J.Kossack@ovp.eop.gov 202-881-8797 Andrew Kossack GSA\Presidential Advisory Commission on Election Integrity\ DFO |

*FACA Database Search Report*, FACA Database.[15]

39.    Thus the entire chain of command assigned to preside over the Commission—from DFO and Executive Director Andrew J. Kossack to CMO M. Virginia Wills to Acting GSA Administrator Timothy O. Horne—is part of and subject to the control of the GSA.

40.    As further proof of the GSA's control over the Commission, the GSA is the agency that filed the Commission's Charter. *See* Email from Andrew J. Kossack, Assoc. Counsel, Office of the Vice President, to Commission Members (June 26, 2017)[16] ("The General Services Administration filed the Commission's charter this past Friday, which officially establishes the Commission as a Presidential advisory committee and permits the Commission to commence its official duties under Executive Order 13799."). The role of filing a committee charter is reserved exclusively to "the Committee Management Officer (CMO) designated in accordance with

---

[15] https://www.facadatabase.gov/rpt/databasesearchcurrent.asp (specify "GSA" as the "Agency Organization"; specify "Yes" under "Presidential"; click "Continue"; and scroll to the far right of the resulting page, where Mr. Kossack is listed as "Andrew Kossack GSA\Presidential Advisory Commission on Election Integrity\ DFO") (last visited Oct. 12, 2017).

[16] *Available at* https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/Email%20regarding%20June%202 8%20Organizational%20Call.pdf.

section 8(b) of the Act, or . . . another agency official designated by the agency head." 41 C.F.R. § 102-3.70.

41.     Finally, as this Court noted in July, the Commission's first meeting notice "appears to have been published by the GSA, and under the section entitled 'Agency,' both the GSA, and the Office of Government-wide Policy ('OGP'), a component of the GSA, are listed." *ACLU v. Trump*, No. 17-1351, 2017 WL 3049418, at *4 (D.D.C. July 18, 2017). That practice has continued in the intervening months: all four of the subsequent Federal Register notices filed on the Commission's behalf are attributed to the General Services Administration. *Document Search*, Federal Register.[17]

42.     In sum, these facts and admissions are relevant because they demonstrate that the Commission is part of and subject to the control of the GSA, and thus subject to judicial review under 5 U.S.C. §§ 701 *et seq*. and the PIA requirements of the E-Government Act. Moreover, many of these facts were not known to Plaintiff when Plaintiff filed the Second Amended Complaint on July 11, 2017. Finally, these facts justify the addition of M. Virginia Wills as a Defendant in her official capacity.

**New Facts Demonstrating that the Commission Considers Itself an Agency (or Part of One)**

43.     On September 29, 2017, the Commission formally asserted—for the first time—that it would refuse to release certain records covered by § 10(b) of the FACA because they are "exempt from disclosure under 5 U.S.C. § 552(b)(6) to protect personal privacy." Third Kossack Decl. ¶ 11; *see also* Document Index 8–9 ("Exempt pursuant to (b)(6)").

44.     Under § 10(b) of the FACA, advisory committees must make "available for public inspection and copying" the "records, reports, transcripts, minutes, appendixes, working papers,

---

[17]

https://www.federalregister.gov/documents/search?conditions%5Bterm%5D=%22presidential+advisory+commission+on+election+integrity%22 (last visited Oct. 12, 2017).

drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee."

45.     The sole qualification to this disclosure requirement is that it is "[s]ubject to section 552 of title 5, United States Code[.]" *Id.*; *see also Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 2d 213, 227 (D.C. Cir. 2017) ("[T]he government is required to make section 10(b) materials available to the public as a matter of course, unless a FOIA exemption applies.").

46.     But section 552, otherwise known as the Freedom of Information Act ("FOIA"), applies strictly to "agenc[ies]." 5 U.S.C. § 552(a), (f)(1). The FOIA does not give *non-agency* entities any authority to withhold documents that the law otherwise requires to be disclosed. Thus, no FOIA exemption could *ever* apply to the records of a non-agency advisory committee (absent some other provision of law expressly broadening the availability of those exemptions).

47.     The Commission's assertion of a FOIA exemption to withhold documents is thus an admission that it is an agency, or part of an agency, within the meaning of 5 U.S.C. § 552(f)(1). Though Plaintiff vigorously opposes the public disclosure of the state voter data that the Commission has collected, Plaintiff submits that the Commission cannot invoke legal protections reserved for agencies unless the Commission's actual agency status is both acknowledged and enforced.

48.     Moreover, Defendants have repeatedly argued that the definitions of "agency" in the FOIA, the E-Government Act, and the Administrative Procedure Act ("APA") are coextensive. *E.g.*, Mem. Supp. Defs.' Mot. Dismiss 30 ("Finally, the E-Government Act's definition of 'agency' should follow the same definition as the APA, FOIA, and the Privacy Act."). Thus, by Defendants' own logic, the Commission has admitted that it is an agency, or part of an agency,

subject to judicial review under 5 U.S.C. §§ 701 *et seq*. and subject to the requirements of the E-Government Act.

49.    This admission of agency status is further confirmed by the concession that the Commission's activities are not, in fact, limited to the "sole function" of advising the President. *Soucie v. David*, 448 F.2d 1067, 1075 (D.C. Cir. 1971). On September 29, 2017, the Commission asserted that it need not publicly disclose "documents created by staff members, or even by subcommittees chaired by committee members" because these components of the Commission "do not advise the President directly." Third Kossack Decl. ¶ 3. This conflicts with Defendants' prior assertions that the Commission's only role is to advise the President. *E.g.*, Reply Supp. Defs.' Mot. Dismiss 16–17 ("The sole purpose of the Commission is to provide advice. . . . The Commission has been vested with no other authority.").

50.    If indeed there are components of the Commission whose job is something other than providing advice the President, by definition it cannot be the Commission's *sole function* to advise the President. Based on this admission, the Commission must fail the *Soucie* test on which Defendants' entire disavowal of agency status rests.

51.    In sum, these newly disclosed facts are relevant because they demonstrate that the Commission considers itself to be an agency, or part of an agency, subject to judicial review under 5 U.S.C. §§ 701 *et seq*. and subject to the PIA requirements of the E-Government Act. Moreover, these facts were not known to Plaintiff when Plaintiff filed the Second Amended Complaint on July 11, 2017.

### New Facts Demonstrating that EPIC Has Associational Standing

52.     EPIC has asserted associational standing to bring claims "on behalf of numerous EPIC

Advisory Board members and EPIC Directors whose privacy is threatened by the Commission's

unlawful collection of personal voter data." Mem. Opp. Defs.' Mot. Dismiss 17, ECF No. 50.

53.     On September 29, 2017, the Commission disclosed for the first time that it has collected

voter data from at least nineteen states and one county. Document Index 8–9.

54.     One of the nineteen states from which the Commission has collected data is New Jersey.

*Id.* at 8.

55.     EPIC Member Helen Nissenbaum is registered to vote in New Jersey. Decl. of Helen

Nissenbaum ¶ 12, ECF No. 52-3. She has attested that the "disclosure of [her] personal

information" to the Commission would "cause [her] immediate and irreparable harm." *Id.* at ¶

14.

56.     The Commission also disclosed on September 29, 2017, that Vice Chair Kris Kobach

received a "Letter containing instructions to request information from Texas databases" on July

31, 2017 from Lindsey Aston, General Counsel for the Texas Secretary of State. Document

Index 7.

57.     EPIC Member Deborah Peel is registered to vote in Texas. Decl. of Deborah C. Peel ¶ 12,

ECF No. 52-2. She has attested that the "disclosure of [her] personal information" to the

Commission would "cause [her] immediate and irreparable harm." *Id.* at ¶ 14.

58.     In sum, these newly disclosed facts are relevant to this matter because they reinforce that

EPIC Members face actual or imminent injury as a result of the Commission's collection of voter

data—and, by extension, that EPIC has associational standing to bring claims on their behalf.

Moreover, these facts were not known to Plaintiff when Plaintiff filed the Second Amended

Complaint on July 19, 2017.

## New Claims Clarifying Plaintiff's Entitlement to Relief

59.     This Court previously raised questions about the scope of judicial review available under

Section 702 of the APA. Mem. Op. 26, ECF No. 40. That issue is currently on appeal to the D.C.

Circuit. Pl.'s Mem. Opp'n to Def.'s Mot. to Stay, ECF No. 50. However, even if this Court

ultimately decides that injunctive relief is not available against certain governmental authorities,

this court would still have authority to issue mandamus or declaratory relief.

60.     As the court made clear in *Lawyers' Comm. for Civil Rights Under Law v. Presidential

Advisory Comm'n on Election Integrity*, No. 17-1354, 2017 WL 3028832 (D.D.C. July 18,

2017), mandamus may be available where the plaintiff has demonstrated "(1) a clear an

indisputable right to relief, (2) that the government agency or official is violating a clear duty to

act, and (3) that no adequate alternative remedy exists." *Id*. at *6 (quoting *Am. Hosp. Ass'n v.

Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)). The court noted that judicial review pursuant to

the APA might provide an "adequate alternative remedy," but if such review is not available then

mandamus could be.

61.     Even if this Court were otherwise hesitant to use its mandamus authority to issue

injunctive relief against the Government, it could still issue declaratory relief in order to make

clear the obligations of the Commission. *See, e.g.*, *Nat'l Treasury Emps. Union v. Nixon*, 492

F.2d 587, 616 (D.C. Cir. 1974) (issuing a declaratory judgment finding that the President had a

non-discretionary duty to effectuate a pay raise under the Federal Pay Comparability Act).

62.     In view of this, Plaintiff proposes to amend the claims section of the Complaint to clarify

the availability of mandamus and declaratory relief in this matter.

17

**Plaintiff is Entitled to Leave to File a Third Amended Complaint**

63.     Under Federal Rule of Civil Procedure 15(a)(2), a complaint may be amended for a third time "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

64.     In accordance with Local Civil Rule 7(m), EPIC contacted opposing counsel regarding this motion. Counsel stated that Defendants will oppose this motion.

65.     "[J]ustice requires the Plaintiff be permitted to amend the operative complaint" when the amendments are "based on evidence not available to the Plaintiff" at the time the operative complaint was filed. *Mattiaccio v. DHA Grp., Inc.*, 293 F.R.D. 229, 234 (D.D.C. 2013).

66.     The proposed amendments to Plaintiff's complaint are based heavily on evidence that was not available to the Plaintiff on July 11, 2017, when the Second Amended Complaint was filed.

67.     Many of the facts essential to Plaintiff's proposed amendments were disclosed by the Commission less than two weeks ago.

68.     Some of these facts were omitted from prior briefing by Defendants despite them being material to the question of the Commission's agency status.

69.     Finally, these proposed amendments would be unnecessary had Defendants been forthright and consistent about the Commission's agency status from the beginning. Defendants have instead endeavored to avail themselves of agency status when it suits them, invoking agency legal protections and relying on agency legal frameworks, even as they deny that same status in order to evade judicial review in this case.

70.     Because Defendants already have knowledge of the facts in Plaintiff's proposed amendments, Defendants will suffer no undue prejudice from their addition to the Complaint.

71.     Finally, because these amendments offer independent grounds for the Court to subject the

Commission to judicial review and to order the Commission to publish a Privacy Impact

Assessment, their addition to the Complaint would not interfere with the Court's resolution of

the issues raised in connection with Defendants' Motion to Dismiss.

72.     WHEREFORE, Plaintiff respectfully requests that the Court permit the requested

amendments. A Proposed Order is attached.

Respectfully Submitted,

/s/ Marc Rotenberg
MARC ROTENBERG, D.C. Bar # 422825
EPIC President and Executive Director

ALAN BUTLER, D.C. Bar # 1012128
EPIC Senior Counsel

CAITRIONA FITZGERALD*
EPIC Policy Director

JERAMIE D. SCOTT, D.C. Bar # 1025909
EPIC Domestic Surveillance Project
Director

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

*Attorneys for Plaintiff EPIC*

Dated: October 12, 2017                    *\* Appearing pro hac vice*