IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, <br><br> Plaintiff, <br><br> v. <br><br> PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al.*, <br><br> Defendants. | Civil Action No. 1:17-cv-1320 (CKK) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
A THIRD AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiff has filed an original and two amended complaints in this action (Dkt. Nos. 1, 21, 33); the Court has ruled on plaintiff's motion for preliminary injunctive relief (Dkt. No. 40), denying that motion, and that ruling is now on appeal (Dkt. No. 42; *see* No. 17-5171 (D.C. Cir.)); and the parties have fully briefed defendants' motion to dismiss the Second Amended Complaint (Dkt. Nos. 49, 52, 53). Now, in a last-ditch attempt to try to salvage its case, plaintiff seeks leave to file a Third Amended Complaint to bolster its claims to standing and its claims that the Commission is an "agency" subject to the E-Government Act and the Administrative Procedure Act ("APA"). This motion should be denied because the proposed amendments would not protect plaintiff's claims from dismissal. Plaintiff's proposed new allegations regarding the Commission's Committee Management Official, Designated Federal Officer, and charter do not

establish that this presidential commission is part of or under the control of the General Services Administration ("GSA") but rather reinforce the conclusion that GSA provides no more than administrative support.  Plaintiff's proposed new allegations regarding the Commission's assertion of privacy protection for voter registration data, made pursuant to the disclosure provision of the Federal Advisory Committee Act ("FACA") and its prior representations regarding handling of that information, do not demonstrate that the Commission considers itself an agency subject to the Freedom of Information Act ("FOIA").  Plaintiff's proposed new allegations regarding its "Board Members" do not bolster plaintiff's claim to representational standing, which primarily falters because plaintiff does not have true "members" on whose behalf it could sue.  Finally, requests for mandamus or declaratory relief would add nothing to plaintiff's case.  Accordingly, plaintiff's proposed amendments should be denied as futile.

## BACKGROUND

Plaintiff Electronic Privacy Information Center ("EPIC") seeks to prevent the Presidential Advisory Commission on Election Integrity ("Commission") from collecting voter registration data that states already make available to the public under their own laws.  In its operative Second Amended Complaint, plaintiff primarily contends that the Commission – an entity established to advise and assist the President – may not collect such data without first creating and publishing a Privacy Impact Assessment, which the E-Government Act of 2002 requires of federal agencies (but not Presidential commissions) under certain circumstances.[1]  Defendants have moved to dismiss this Second Amended Complaint on the grounds of lack of standing and for failure to state a claim.  As to standing, defendants have shown that plaintiff is not a

---

[1] The Second Amended Complaint also includes two constitutionally based claims, but the current motion does not appear to be related in any way to those.

"membership" organization or the functional equivalent of a traditional membership organization permitted to sue on behalf of its Advisory Board members. Defs.' Dismiss Mem. at 11-13, Dkt. No. 49. Further, even if plaintiff could bring this suit on behalf of its Advisory Board members (which it cannot), plaintiff has also failed to demonstrate that either the Commission's solicitation of publicly available voter data or the absence of a Privacy Impact Assessment (which was not required in the case of this Commission) has or will cause these purported "members" a cognizable injury-in-fact. *Id.* at 13-15. Plaintiff also has not alleged any facts establishing that the organization itself has suffered a cognizable injury-in-fact, including an informational injury sufficient to confer standing to sue on its own behalf. *Id.* at 15-24.

Defendants further argued that, even assuming the Court has jurisdiction over this action, plaintiff lacks any viable claims. Defs.' Dismiss Mem. at 15-34. The APA, on which plaintiff must rely for a cause of action, and the E-Government Act of 2002, which allegedly creates the substantive duty to prepare a Privacy Impact Assessment, apply only to "agencies." However, the Commission is not an "agency" within the meaning of these statutes because its sole purpose is to advise the President and it does not exercise substantial independent authority. Accordingly, plaintiff's Second Amended Complaint fails to state a claim against the Commission for violation of the APA and the E-Government Act, as well as for violation of the Federal Advisory Committee Act ("FACA").

Plaintiff now seeks to amend the Complaint a third time to bolster its claims to standing and its claims that the Commission is an "agency" subject to the E-Government Act and the APA. Plaintiff's proposed amendments do not, however, rebut the government's arguments, and therefore plaintiff's proposed amendments should be denied as futile.

## ARGUMENT

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED AS FUTILE

In general, when a party seeks to amend its pleading after a responsive pleading has been served, the Court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). However, the Court should deny leave to amend based on futility if the claims, as amended, would not survive a motion to dismiss. *Rumber v. Dist. of Columbia*, 598 F. Supp. 2d 97, 102 (D.D.C. 2009) (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)), *aff'd on other grounds*, 595 F.3d 1298 (D.C. Cir. 2010); *see also Forman v. Davis*, 371 U.S. 178, 182 (1962). Here, plaintiff's proposed amendments would not cure the defects in its claims and therefore amendment should be rejected.

Plaintiff's proposed amendments fall into four categories. Pl.'s Mot. ¶¶ 6, 12, Dkt. No. 54. First, plaintiff seeks to add allegations to bolster its claim, so far without support, that the GSA has a significant role in the work of the Commission, sufficient to transform the Commission itself into an "agency" subject to the E-Government Act and the APA. *Id.* ¶¶ 7-9. Second, it seeks to amend the complaint to add new facts to "demonstrate that the Commission considers itself to be an agency or part of an agency." *Id.* ¶ 10. Third, plaintiff seeks to add new facts "that further substantiate EPIC's associational standing to bring claims on behalf of EPIC's members." *Id.* ¶ 11. Finally, plaintiff seeks leave to add requests for mandamus and declaratory relief. *Id.* ¶ 12. None of these additions has merit.[2]

---

[2] Defendants do not object to plaintiff's removal of the Department of Defense and the United States Digital Service as defendants.

     **A.**     **Plaintiff's Proposed New Allegations Regarding the Commission's Committee Management Official, Designated Federal Officer, and Charter Do Not Establish that the Commission is Part of or Under the Control of GSA.**

Plaintiff first seeks to amend its complaint to add allegations regarding the designation of a GSA employee, Virginia Wills, as the "Committee Management Official" ("CMO") assigned to the Commission. Pl's Mot. ¶¶ 9, 14-22. Plaintiff argues that these facts establish that the Commission "is both part of GSA and subject to the authority of GSA." *Id.* ¶ 14. Plaintiff overstates the role of the CMO and GSA with regard to the Commission, however. The Executive Order establishing the Commission directs GSA to provide "such administrative services, funds, facilities, staff, equipment, and other support services as may be necessary to carry out [the Commission's] mission." Exec. Order No. 13,799, § 7(a), 82 Fed. Reg. 22,389 (2017). This role is consistent with the Federal Advisory Committee Act ("FACA") itself, which provides that "[i]n the case of Presidential advisory committees, [support] services may be provided by the General Services Administration." 5 U.S.C. app. 2 § 12. There is no pled evidence that the CMO is doing anything more than fulfilling the duties assigned to GSA pursuant to the Executive Order and FACA or that GSA through the CMO "controls" the substantive work of the Commission. The general administrative support provided by GSA does not make the Commission part of GSA. Accordingly, the amendments plaintiff seeks to introduce would have no effect on the legal status of its claims.

Plaintiff relies on the duties ascribed to the CMO by section 8(b) of FACA to argue that the use of GSA's CMO here means that GSA controls the Commission. Pl.'s Mot. ¶¶ 17-19. That section of FACA requires any "agency" that establishes advisory committees to designate a CMO who shall perform certain functions for "advisory committees established by that agency." 5 U.S.C. app. 2 § 8(b). However, that provision is silent as to whether Presidential advisory

committees, which are not established by an "agency," should have CMOs and, if so, what those CMOs should do. GSA's regulations provide that the "chairperson of an independent Presidential advisory committee" must "[c]onsult with [GSA's Committee Management] Secretariat concerning the designation of a Committee Management Officer (CMO) and Designated Federal Officer (DFO)." 41 C.F.R. § 102–3.110. However, the regulations also do not specify what functions a CMO assigned to a Presidential advisory committee should perform.

It is entirely consistent with the above statutory and regulatory scheme, which is mostly silent on the question of the existence and duties of a CMO with regard to presidential advisory committees, for GSA to assign one of its CMOs to the Commission to provide administrative support, consistent with the Presidential Executive Order establishing the Commission. That assignment does not, however, mean that the CMO is "controlling" the Commission or performing substantive work for the Commission. As with most presidential Commissions, the Commission is supported by another entity, which has been designated here as GSA, for some of its administrative functions. *See Meyer v. Bush*, 981 F.2d 1288, 1296 (D.C. Cir. 1993) (noting that the Task Force on Regulatory Reform "operated out of the Vice President's office without a separate staff, borrowing OMB personnel as needed"). The evidence cited by plaintiff shows that the CMO (and/or GSA generally) is performing administrative and recordkeeping functions as part of the support role envisioned for GSA. *See* Pl.'s Mot. ¶ 19 (CMO is the officer to contact to review Commission records), ¶ 21 (CMO edited the FACA database), ¶ 40 (GSA filed the charter), ¶ 41 (GSA is publishing the meeting notices). The assignment of GSA's CMO to perform these functions for the Commission does not convert the Commission into an "agency" or convert the Commission's substantive actions (such as data collection) into actions by GSA. *Meyer*, 981 F.2d at 1290 (holding that presidential Task Force on Regulatory Relief, operated

from the Office of the Vice President, was not an "agency" subject to FOIA even though it used staff from OMB, observing, *inter alia*, that "the responsibilities of both OMB and the Task Force[] . . . are analytically quite distinct"). Nor does the manner in which the Commission is categorized in an informational database have any legal significance. *See* Pl.'s Mot. ¶¶ 24-28.

Plaintiff also contends that the Commission must consider GSA to be its "head" because its by-laws state that its designated federal officer ("DFO") was appointed by GSA pursuant to 41 C.F.R. § 102-3.105, which provides that the "head of each agency" is to "[d]esignate" the DFO for an advisory committee. Pl.'s Mot. ¶¶ 31-34. However, the applicable regulations regarding designation of a DFO for a presidential advisory committee are different. *See* 41 C.F.R. §§ 102-3.110, 102-3.120. Section 102-3.110 provides that the chairperson of a presidential advisory committee must consult with GSA regarding the designation of a DFO, and Section 102-3.120 provides that GSA's Secretariat "must designate" the DFO for a presidential advisory committee. GSA's involvement in the process of designating the DFO for the Commission here is fully consistent with these provisions and does not render the GSA the "head" of the "agency" in charge of the Commission. Nor is there any pled evidence that, once designation is made, GSA, or the CMO, have any "chain of command" authority over the DFO. Pl.'s Mot. ¶ 39. It is not clear how the regulation requiring the DFO to chair a meeting "when so directed by the agency head" (*id.* ¶ 36) operates in the case of a presidential advisory commission, but this one area of ambiguity does not support plaintiff's thesis that GSA "controls" the DFO.

In short, plaintiff's scouring of GSA's FACA website for references to GSA in areas devoted to the Commission reveals nothing inconsistent with the role granted GSA under the Executive Order, to provide administrative support to the Commission (a fact which has been

7

established in this case from the beginning). There is nothing to indicate that GSA, or any employee of GSA, controls the Commission, has any role in the substantive work of the Commission, or is involved in any way in data collection. Nor does the proposed Third Amended Complaint plead facts that would so suggest. *See* Proposed Third Am. Compl. ¶¶ 33-46. These proposed amendments should therefore be rejected as futile.

> **B.    Plaintiff's Proposed New Allegations Regarding the Commission's Assertion of Privacy Protection for Certain Information Do Not Demonstrate That the Commission Considers Itself an Agency.**

Plaintiff also seeks to amend the complaint to add allegations regarding the Commission's statement, made in a filing in another lawsuit,[3] that it would not release certain records covered by section 10(b) of FACA because the information in the records is exempt from disclosure pursuant to exemption 6 of the Freedom of Information Act, 5 U.S.C. § 552(b)(6). *See* 5 U.S.C. app. 2 § 10(b). Plaintiff asserts that this reference to FOIA indicates that the Commission "has admitted that it is an agency" because FOIA applies only to agencies. Pl.'s Mot. ¶¶ 47-48.

This argument is specious. Plaintiff ignores the D.C. Circuit's holding that section 10(b)'s reference to FOIA does not intend to incorporate all the procedural and substantive requirements of FOIA; rather, it incorporates just the exemptions from disclosure found in 5 U.S.C. § 552(b) (with some exceptions not relevant here). "FACA incorporates the FOIA exemptions, . . . but the government's duty to disclose is otherwise independent of FOIA." *Natural Res. Def. Council v. Johnson*, 488 F.3d 1002, 1003 (D.C. Cir. 2007) (citing *Food Chem. News v. Dep't of Health & Human Servs.*, 980 F.2d 1468, 1469-70 (D.C. Cir. 1992)). Thus, a

---

[3] *Lawyers Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, No. 1:17-cv-1354 (CKK) ("*LCCR*"), ECF Nos. 33-1 (¶ 11), 33-3 (pp. 8-9).

FACA committee can assert those exemptions in a 10(b) disclosure even if it would not otherwise be subject to FOIA, and the assertion of those exemptions does not constitute a concession that the FACA committee is necessarily a FOIA agency.

Plaintiff also alleges that the Commission's statement in *LCCR* that some components of the Commission (staff members or individual Commissioners) "do not advise the President directly" means that those components are doing other work. Pl.'s Mot. ¶¶ 49, 50. According to plaintiff, this means that the Commission's "sole function" must not be to advise the President, therefore rendering it more like an agency. But plaintiff misreads the cited statement. That statement was not meant to indicate that staff or members were doing some other sort of substantive work outside of the advisory role of the Commission. Rather, the statement that those individuals "do not advise the President directly" meant that those staff or members did not themselves individually provide advice to the President, as is the role of the full Commission. Those individuals' work instead constituted preparatory work during a commission's interim stages as it is working towards formulating the advice that will be provided directly to the President. Such interim work is necessarily part of the advisory process and does not mean that the Commission is acting like an "agency." *See Nat'l Anti-Hunger Coalition v. Executive Comm. of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C. 1983) (noting that subsidiary "task forces" "do not directly advise the President or any federal agency, but rather provide information and recommendations for consideration to the Committee"), *aff'd*, 711 F.3d 1071 (D.C. Cir. 1983).

  **C.**  **Plaintiff's Proposed New Allegations Regarding its Alleged "Members" Nissenbaum and Peel Do Not Bolster Plaintiff's Claim to Representational Standing.**

 Plaintiff seeks leave to add additional information, also obtained from *LCCR,* allegedly pertinent to the allegations of injury by its Advisory Board Members Nissenbaum and Peel. Pl.'s Mot. ¶¶ 11, 52-58. Namely, plaintiff seeks to add the fact that the states where those two individuals are registered to vote have now submitted data to the Commission. *Id.* ¶¶ 54-57. This information is of little import, however. As explained in defendants' motion to dismiss, plaintiff lacks representational standing because it is not a membership organization or the functional equivalent of one. Defs.' Dismiss Mem. at 11-13. Thus, any potential injury suffered by its Advisory Board "Members" is ultimately irrelevant.

 In any event, to the extent that plaintiff's Advisory Board Members might be considered "members" (which they are not), the new allegations do not bolster their deficient claims of injury. As defendants demonstrated in their Reply Brief, both New Jersey (the state in which Nissenbaum is registered) and Texas (the state in which Peel is registered) have stated that they would provide only publicly available information to the Commission. Defs.' Dismiss Reply at 23. Plaintiff does not allege that those states have gone beyond those representations. Nissenbaum and Peel cannot have suffered any concrete injury simply from the transfer of public information from the states to the Commission. Plaintiff alleges no other form of injury from this transfer. These allegations, therefore, add nothing to plaintiff's argument for standing.

  **D.**  **Requests for Mandamus or Declaratory Relief Would Add Nothing to Plaintiff's Case.**

 Mandamus is a "drastic remedy, to be invoked only in extraordinary circumstances." *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (internal quotation marks omitted; citing *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34 (1980)). "To show entitlement to

mandamus, plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). These requirements are jurisdictional. *Id*.

Plaintiff seeks to add a cause of action for mandamus here. This proposed amendment is unnecessary, as it would add nothing to plaintiff's case. On the one hand, if plaintiff prevails on its view that review may be had under the APA (which it should not), mandamus will be unavailable because an "adequate alternative remedy," *i.e.*, under the APA, exists. *See Jasperson v. Fed. Bureau of Prisons*, 460 F. Supp. 2d 76, 86 (D.D.C. 2006); *Ransom v. Babbitt*, 69 F. Supp. 2d 141, 149 (D.D.C. 1999). If, on the other hand, the Court finds that plaintiff lacks a remedy under the APA because the Commission is not an "agency," then the Commission also has no duty to conduct a Privacy Impact Assessment because it is not an "agency" subject to the E-Government Act. *See* Defs.' Dismiss Mem. at 30-31. Therefore, mandamus would also not be available because the Commission would not have violated "a clear duty to act." There is thus no circumstance in which plaintiff would have a viable cause of action under mandamus, but not under its existing causes of action. This amendment would therefore be futile.

Plaintiff also seeks to add a new request for declaratory relief. "It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, the availability of [declaratory] relief presupposes the existence of a judicially remediable right." *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (citations and internal quotation marks omitted). For the reasons stated in defendants' Motion to Dismiss that plaintiff lacks standing and a cognizable claim for injunctive relief, it also lacks standing and a cognizable a claim for declaratory relief. Accordingly, this amendment is futile as well.

**CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Leave to File a Third Amended Complaint should be denied.

Dated: October 26, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINA A. WOLFE
JOSEPH E. BORSON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendants*