## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | |
| Plaintiff, | |
| v. | Civil Action No. 1:17-cv-1320 (CKK) |
| PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al.*, | |
| Defendants. | |

## NOTICE OF COMPLIANCE

Pursuant to this Court's June 28, 2018 Minute Order, Defendants respectfully submit an updated declaration from Charles C. Herndon, Director of White House Information Technology.

Dated:  July 17, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Joseph E. Borson*
CAROL FEDERIGHI
Senior Trial Counsel
KRISTINIA A. WOLFE
JOSEPH E. BORSON (Va. Bar No. 85519)
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-1944 / Fax: (202) 616-8460
E-mail: Joseph.Borson@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, |  |
| Plaintiff, |  |
| v. | Civil Action No. 1:17-cv-1320 (CKK) |
| PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, *et al.*, |  |
| Defendants. |  |

## FOURTH DECLARATION OF CHARLES C. HERNDON

I, Charles C. Herndon, declare as follows.

1.      As I have described in my previous declarations,[1] I am the Director of White House Information Technology ("WHIT") and Deputy Assistant to the President.  I am the senior officer responsible for the information resources and information systems provided to the President, Vice President, and Executive Office of the President.  I report to the White House Deputy Chief of Staff and Assistant to the President for Operations, and through him to the Chief of Staff and the President.  I am part of what is known as the White House Office.  This

---

[1] I previously submitted a declaration in this action that was filed on July 17, 2017, ECF No. 38-1.  I also submitted a declaration that was filed on January 9, 2018, in *Dunlap v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-2361 (CKK) (D.D.C.) ("Second Declaration"), and another declaration that was filed on January 16, 2018, in *Joyner v. Presidential Advisory Commission on Election Integrity*, No. 170-cv-22568-MGC (S.D. Fla.) , ECF No. 82-2 ("Third Declaration").

declaration is based on my personal knowledge and upon information provided to me in my official capacity.

2.      With respect to the current status of the state voter data, all of the state voter data provided to the former Presidential Advisory Commission on Election Integrity ("Commission") remains encrypted and stored in a separate container within the domain electionintegrity.whitehouse.gov.  Only four members of the WHIT's staff have ever had access to the data.  These staff members are not authorized to transfer or utilize this data.  No member of the former Commission has ever been provided access to the state voter data, either before or after the Commission's termination. The state voter data has never been transferred to, or accessed or utilized by, the Department of Homeland Security or any other agency.  To be clear, the state voter data has not been transferred to any entity or individual.

3.      In my Second Declaration, I stated that "[p]ending resolution of outstanding litigation involving the Commission, and pending consultation with [the National Archives and Records Administration ("NARA")], the White House intends to destroy all voter data.  Until such disposition, the data will continue to be maintained by the WHIT technical staff as presidential records."  Second Herndon Decl. ¶ 4.

4.      Consistent with the intention to destroy the voter data, and in accordance with the Presidential Records Act, 44 U.S.C. § 2203(c), the President has sought and obtained the written views of the Archivist concerning the proposed disposal of the state voter data.  The Archivist has stated, in accordance with Section 2203(c)(2) of the Presidential Records Act, that he does not intend to take any action under subsection (e) of Section 2203.  Further, the Archivist has agreed that the records proposed for disposal do not have sufficient administrative, historical,

informational, or evidentiary value to warrant continued (*i.e.*, permanent) preservation under the Presidential Records Act, and that it is reasonable to dispose of them.

5.      The state voter data are also currently subject to litigation holds in this and other related cases.  Accordingly, I understand that on June 20, 2018, litigation counsel from the Department of Justice sent a letter to plaintiffs' counsel in this and the related cases seeking their written consent to the destruction of the state voter data.  This letter is attached as Exhibit A.

6.      I am advised that no litigant in any of the pending cases, including plaintiff's counsel in this action, has responded to the June 20, 2018, correspondence.  I understand, however, that the June 20, 2018 letter was attached as an exhibit in support of plaintiff's Application for an Extension of Time to File a Petition for a Writ of Certiorari, which was filed with the Supreme Court on June 21, 2018 and subsequently granted.  That application is attached as Exhibit B.

7.      The White House stands ready to destroy the state voter data.  I am waiting to execute the disposal until I am instructed by litigation counsel that I am able to do so and that the litigation hold issue has been resolved.


        I declare under penalty of perjury that the foregoing is true and correct.



Executed this _17_ day of July 2018.

Charles C. Herndon

# EXHIBIT A



**U.S. Department of Justice**

Civil Division
Federal Programs Branch

20 Massachusetts Avenue, N.W.
Washington, D.C. 20530

Kristina A. Wolfe                                      Tel:  (202) 353-4519
Trial Attorney                                         kristina.wolfe@usdoj.gov

June 20, 2018

Theresa J. Lee
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

Javier Guzman
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043

Harry Sandick
Patterson Bellnap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

Marc Rotenberg
Electronic Privacy Information Center
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009

Skip Pita
Pita Weber Del Prado
9350 South Dixie Highway
Suite 1200
Miami, FL 33156

John Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001

   **Re:**  *Disposal of State Voter Data Obtained by the Former Presidential Advisory*
           *Commission on Election Integrity*

Dear Counsel:

As you know, following the dissolution of the Presidential Advisory Commission on Election Integrity (the "Commission") on January 3, 2018, the Director of the White House Office of Information Technology stated that the White House intends to destroy all state voter data pending consultation with the National Archives and Records Administration, as permitted by federal law.  *See* Third Herndon Decl. ¶ 4, *Joyner v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-22568-MGC (S.D. Fla.), ECF No. 82-2.  The applicable federal law, the Presidential Records Act ("PRA"), provides that:

> (c) During the President's term of office, the President may dispose of those Presidential records of such President that no longer have administrative, historical, informational, or evidentiary value if--
>
>> (1) the President obtains the views, in writing, of the Archivist concerning the proposed disposal of such Presidential records; and
>>
>> (2) the Archivist states that the Archivist does not intend to take any action under subsection (e) of this section.

44 U.S.C. § 2203(c).

We are writing to you now because, in accordance with this provision, the President has obtained the written views of the Archivist concerning the proposed disposal of the state voter data.[1]  The Archivist has stated, in accordance with Section 2203(c)(2) of the Presidential Records Act, that he does not intend to take any action under subsection (e) of Section 2203. Further, the Archivist agreed that the records proposed for disposal do not have sufficient administrative, historical, informational, or evidentiary value to warrant continued (i.e., permanent) preservation under the PRA, and that it is reasonable to dispose of them.

As you know, however, these same records are subject to litigation holds, as they may be relevant to claims brought in your cases.  *See, e.g.*:

- *Am. Civil Liberties Union v. Trump*, No. 17-cv-1351-CKK (D.D.C.), Am. Compl. ¶¶ 165, 177, 186, Request for Relief ¶¶ 1(a), 2(d), ECF No. 28-1;

- *Common Cause v. Presidential Advisory Comm'n on Election Integrity*, No. 17-1398-RCL (D.D.C.), Am. Compl. ¶¶ 144, 177, 130, Prayer for Relief ¶ 6, ECF No. 21;

- *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-2361-CKK (D.D.C.), Compl. ¶¶ 89-91, ECF No. 1;

---

[1] The specific documents proposed for disposal are "[t]he publicly available State voter roll data submitted by State election officials in response to the June 28, 2017, request from Kris Kobach, Vice Chair of the former Commission, as clarified by Vice Chair Kobach's letter of July 26, 2017, to State election officials."

- *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, Second Am. Compl. ¶¶ 58, 78, 81, Requested Relief ¶ C, No. 17-cv-1320-CKK (D.D.C.), ECF No. 33;

- *Joyner v. Presidential Advisory Comm'n v. Election Integrity*, No. 17-cv-22568-MGC (S.D. Fla.), Am. Compl. ¶¶ 147, 153, 168, Prayer for Relief ¶ E, ECF No. 65;

- *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-1354-CKK (D.D.C.), Compl. ¶¶ 51-53, Prayer for Relief ¶ f, ECF No. 1.

This disposal action is consistent with the relief that many of you requested in your complaints.  Nevertheless, given the litigation holds, we request your written consent before proceeding further.

Please let us know at your earliest convenience if you have any questions or concerns.


Sincerely,


*/s/ Kristina A. Wolfe*
ELIZABETH J. SHAPIRO
CAROL FEDERIGHI
KRISTINA A. WOLFE
JOSEPH E. BORSON
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Phone: (202) 353-4519
Email: kristina.wolfe@usdoj.gov

*Counsel for Defendants*

# **EXHIBIT B**

No. _____

_____

IN THE
SUPREME COURT OF THE UNITED STATES
_____

ELECTRONIC PRIVACY INFORMATION CENTER,

*Applicant*,

v.

PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, ET AL.

*Respondents*.

_____

On Petition for a Writ of Certiorari to the United States
Court of Appeals for the District of Columbia Circuit

_____

**APPLICATION FOR AN EXTENSION OF TIME TO FILE
A PETITION FOR A WRIT OF CERTIORARI**

_____

Marc Rotenberg
  *Counsel of Record*
Alan Butler
John Davisson
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
(202) 483-1140
rotenberg@epic.org

*Counsel for Applicant*

## APPLICATION FOR AN EXTENSION OF TIME TO FILE
## A PETITION FOR A WRIT OF CERTIORARI

To Chief Justice John G. Roberts, Jr., Circuit Justice for the United States Court of Appeals for the District of Columbia Circuit:

Pursuant to 28 U.S.C. § 2101(c) and Supreme Court Rules 13.5, 22, and 30.3, Applicant Electronic Privacy Information Center ("EPIC") respectfully requests that the time to file a Petition for a Writ of Certiorari in this case be extended by sixty days, to and including August 30, 2018. The Court of Appeals entered judgment and issued its opinion on December 26, 2017. *See* App. 1. On April 2, 2018, the Court of Appeals issued an order denying EPIC's petition for rehearing en banc or, in the alternative, for vacatur and remand. *See* App. 2. Absent an extension of time, the time to file a petition for a writ of certiorari will expire on July 1, 2018. EPIC is filing this application at least ten days before that date. *See* S. Ct. R. 13.5. This Court would have jurisdiction over the judgment of the Court of Appeals under 28 U.S.C. § 1254(1).

## Background

The Presidential Advisory Commission on Election Integrity ("Commission") was created on May 11, 2017. Exec. Order No. 13,799, 82 Fed. Reg. 22,389 (May 11, 2017). On June 28, 2017, Commission Vice Chair Kris Kobach sent letters to election officials in all fifty states and the District of Columbia seeking to collect a wide array of personal voter information. Court of Appeals Joint Appendix (JA) 60. EPIC filed suit on July 3, 2017, and subsequently moved for a preliminary injunction to halt the Commission's

collection of voter data pending the publication of a privacy impact assessment pursuant to section 208 of the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899. JA 6, 11, 132–147. On July 24, 2017, the District Court denied EPIC's motion, holding that neither the Commission nor any of the other named Defendants were subject to judicial review under the Administrative Procedure Act ("APA"). JA 14–48.

EPIC filed a notice of appeal from the District Court's decision on July 25, 2017. JA 11. EPIC asked the Court of Appeals to determine, *inter alia*, "[w]hether the District Court erred in holding that APA review is unavailable for the collection of state voter data by Defendant Presidential Advisory Commission on Election Integrity." Appellant's Br. 4. EPIC also asked the Court of Appeals "to issue a preliminary injunction halting the Commission's collection of state voter data" under *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006). Appellant's Br. 2, 18–19. On December 26, 2017, a panel of the Court of Appeals affirmed the District Court's denial of a preliminary injunction on alternate grounds, finding that EPIC "d[id] not show a substantial likelihood of standing to press its claims that the defendants have violated the E-Government Act." App. 1 at 14. The Court of Appeals rejected the District Court's nine-page analysis, JA 29–37, and concluded in three paragraphs that EPIC lacked informational standing.

On January 3, 2018, the President issued an Executive Order terminating the Commission in its entirety. Exec. Order No. 13,820, 83 Fed.

Reg. 969 (Jan. 3, 2018). In response, on January 11, 2018, EPIC moved the Court of Appeals panel to vacate its decision under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), and to remand the case to the District Court. Appellant's Mot. Vacate Decision, Dismiss Appeal as Moot, and Remand Case. On February 9, 2018, EPIC also petitioned the full Court of Appeals for rehearing en banc or, in the alternative, for vacatur and remand. Pet. of EPIC for Reh'g En Banc or, in Alternative, Vacatur & Remand. On April 2, 2018, the Court of Appeals denied both EPIC's motion for vacatur and EPIC's petition for rehearing en banc or vacatur. App. 2; App. 3.

## Reasons for Granting an Extension of Time

The time to file a petition for a writ of certiorari in this case should be extended sixty days for the following reasons:

1.    First, there is a substantial prospect that the Court will grant certiorari in this case and vacate or reverse the decision of the Court of Appeals. This case raises a question about Article III informational standing that is of great importance to the enforcement of open government and consumer protection statutes: where a plaintiff asserts a view of the law under which a defendant must disclose certain information to the plaintiff, does the plaintiff suffer an injury in fact by virtue of seeking and being denied access to that information?

The Court of Appeals' decision, which answers that question in the negative, is in direct conflict with *Federal Election Commission v. Akins*, 524

U.S. 11 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989). In *Akins*, the Court held that the plaintiffs could establish an "injury in fact" based on their "inability to obtain information." 524 U.S. at 21. In *Public Citizen*, the Court specifically determined that the violation of a statutory right to information was sufficient to establish informational standing. 491 U.S. at 449. Yet in the decision below, the Court of Appeals imposed an additional burden on plaintiffs seeking to establish informational standing: a requirement that the plaintiff prove Congress "had in mind" the particular "type of plaintiff" bringing suit and the particular "type of harm" suffered by the plaintiff as a result of nondisclosure. App. 1 at 10.

The Court of Appeals' decision also conflicts directly with informational standing decisions by other circuits, which have refused to impose a heightened burden of proof on plaintiffs asserting informational standing. *See, e.g.*, *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 823 (8th Cir. 2013) ("[A]n informational injury alone is sufficient to confer standing, even without an additional economic or other injury."); *Ctr. for Biological Diversity v. BP Am. Prod. Co.*, 704 F.3d 413, 429–30 (5th Cir. 2013) (holding environmental group had standing to sue on behalf of its members based on defendant's failure to release information as required under Clean Water Act, CERCLA, and EPCRA); *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 546 (6th Cir. 2004) (holding plaintiffs satisfy requirements of Article III standing when they allege that defendants "are disobeying the law in failing

4

to provide information that the plaintiffs desire and allegedly need"); *Heartwood, Inc. v. U.S. Forest Serv.*, 230 F.3d 947, 952 n.5 (7th Cir. 2000) (holding plaintiff suffered informational injury where defendant agency failed to conduct and publish environmental assessments).

Finally, there is a particular likelihood that the Court will grant certiorari, vacate the Court of Appeals' decision under *Munsingwear*, and dismiss EPIC's appeal as moot. Although the D.C. Circuit's decision is in irreconcilable conflict with the precedents of this Court and other circuit courts on an important question of law—and is therefore worthy of the Court's review—EPIC's appeal has also been unilaterally mooted by the Government after the Court of Appeals issued its judgment.

2.    Second, an extension would give EPIC a better chance of incorporating into its certiorari petition the Third Circuit's pending decision in *Long v. SEPTA*, No. 17–1889 (3d Cir. argued Dec. 12, 2017). *Long* presents almost exactly the same question as this case: whether a plaintiff suffers an injury in fact by being denied information to which the law allegedly entitles her, or whether the plaintiff must also allege an additional harm suffered from the denial of that information? The Third Circuit has yet to directly address this question. If *Long* is decided prior to the filing of EPIC's certiorari petition, the Third Circuit's ruling will inform EPIC's analysis and affect the balance of the circuit split identified in the petition.

3.     Third, an extension would provide additional time for the Government to carry out its planned deletion of the state voter data still in its possession. Such a development—though mostly irrelevant to EPIC's certiorari petition—would end any conceivable dispute as to the mootness of EPIC's appeal and further reinforce the appropriateness of *Munsingwear* vacatur in this case.

EPIC maintains, as it did below, that its appeal has already been rendered moot by the unilateral actions of the Government. The sole relief EPIC sought on appeal was a preliminary injunction to "halt the collection of state voter data by Defendant Presidential Advisory Commission on Election Integrity." Appellant Br. 4. The Commission was terminated by the President in January 2018, and the Government has halted the collection of voter data. As a result, no court could grant EPIC "any effectual relief whatever" within the scope of its appeal. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). The Government has erroneously argued that EPIC's appeal still presents a live controversy because "the voter data that had been collected by the Commission remains, in encrypted form, on a White House server." Resp. Pet. Reh'g En Banc 5. But EPIC did not ask the D.C. Circuit to order the disgorgement of any voter data, and the Government's retention or deletion of that information has no bearing on the mootness of EPIC's appeal.

Nevertheless, an extension would provide additional time for the Government to resolve its disposition of the state voter data, which in turn may

resolve the question of mootness to the satisfaction of both parties. The Government has repeatedly stated that it "intends to destroy all state voter data" in its possession. App. 4 at 2; *accord* Resp. Pet. Reh'g En Banc 5. In a letter dated June 20, 2018, the Government notified EPIC that the National Archives and Records Administration had cleared the President to "dispose of" the voter data retained by the White House. App. 4 at 2. The Government also requested the consent of EPIC and other litigants to destroy that data. *Id.* Allowing up to sixty additional days for the Government to complete this data deletion process could provide the Court with a cleaner vehicle for certiorari and better candidate for *Munsingwear* vacatur.

4. Fourth, an extension would provide EPIC with additional time to obtain outside counsel and to acquaint that counsel with the legal and factual complexities of this case. Although EPIC regularly files amicus briefs before the Court, *see, e.g.*, Br. of Amicus Curiae EPIC, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), EPIC is diligently seeking experienced Supreme Court counsel to assist in the preparation and filing of its certiorari petition.

5. Finally, no meaningful prejudice would arise from an extension, as the Court would hear oral argument and issue its opinion in October Term 2018 whether or not an extension is granted.

For the foregoing reasons, the time to file a Petition for a Writ of Certiorari in this case should be extended by sixty days, to and including August 30, 2018.

Respectfully submitted,

Marc Rotenberg
 *Counsel of Record*
Alan Butler
John Davisson
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
(202) 483-1140
rotenberg@epic.org

*Counsel for Applicant*

June 21, 2018

No. _____

_____

IN THE
SUPREME COURT OF THE UNITED STATES
_____

ELECTRONIC PRIVACY INFORMATION CENTER,

*Applicant*,

v.

PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, ET AL.

*Respondents.*

_____

**CORPORATE DISCLOSURE STATEMENT**

_____

The Electronic Privacy Information Center ("EPIC") is a 501(c)(3) non-profit corporation. EPIC has never issued shares or debt securities to the public. EPIC has no parent corporations, shareholders, subsidiaries, or affiliates, and no publicly held company owns any stock in EPIC.

# Appendix 1

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 17-5171**                    **September Term, 2017**
FILED ON: DECEMBER 26, 2017

ELECTRONIC PRIVACY INFORMATION CENTER,
                APPELLANT

v.

PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY, ET AL.,
                APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01320)

———

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges*

**J U D G M E N T**

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia and was argued by counsel.  On consideration thereof, it is

**ORDERED** and **ADJUDGED** that the judgment of the District Court appealed from in this cause is hereby affirmed, in accordance with the opinion of the court filed herein this date.

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:    /s/

Ken Meadows
Deputy Clerk

Date: December 26, 2017

Opinion for the court filed by Circuit Judge Henderson.
Concurring opinion filed by Senior Circuit Judge Williams.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued November 21, 2017       Decided December 26, 2017

No. 17–5171

ELECTRONIC PRIVACY INFORMATION CENTER,
APPELLANT

v.

PRESIDENTIAL ADVISORY COMMISSION ON
ELECTION INTEGRITY, ET AL.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01320)

————

*Marc Rotenberg* argued the cause for the appellant.  *Alan Butler* was with him on brief.

*Daniel Tenny*, Attorney, United States Department of Justice, argued the cause for the appellees.  *Mark B. Stern*, Attorney, was with him on brief.  *Elizabeth J. Shapiro*, Attorney, entered an appearance.

*Lawrence J. Joseph* was on brief for the *amicus curiae* Eagle Forum Education & Legal Defense Fund in support of the appellees.

2

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

Opinion concurring in part and concurring in the judgment filed by *Senior Circuit Judge* WILLIAMS.

KAREN LECRAFT HENDERSON, *Circuit Judge*: By executive order issued in May 2017, the President established the Presidential Advisory Commission on Election Integrity (Commission). Exec. Order No. 13799, 82 Fed. Reg. 22389 (May 11, 2017). The Commission is a temporary and "solely advisory" body charged with studying the integrity of federal elections. *Id*. § 3. In keeping with that objective but lacking any authority to demand information, the Commission "requested" that each state and the District of Columbia provide the Commission with certain "publicly-available voter roll data." Joint Appendix (JA) 51.

The Electronic Privacy Information Center (EPIC)—a nonprofit organization whose stated mission is "to focus public attention on emerging privacy and civil liberties issues"—sued the Commission and other entities and officials, claiming violations of the Administrative Procedure Act (APA), 5 U.S.C. § 706. Pl.'s Second Am. Compl. (Compl.), Dkt. No. 33 at 2, 12-13.[1] EPIC sought a preliminary injunction to

---

[1]  EPIC's complaint also alleged violations of the Federal Advisory Committee Act, 5 U.S.C. app. 2, and the Fifth Amendment's Due Process Clause. Those claims are not before us because EPIC presents no argument about them. *See N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (party forfeits argument by failing to brief it or by mentioning it only "in the most skeletal way" (internal quotation omitted)).

3

prohibit the defendants from collecting voter data unless and until they complete a privacy impact assessment as allegedly required by the E-Government Act of 2002, Pub. L. No. 107-347, § 208(b), 116 Stat. 2899, 2921-22 (Dec. 17, 2002). The district court denied preliminary injunctive relief. *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 2017 WL 3141907 (D.D.C. July 24, 2017). The court concluded (*inter alia*) that EPIC has standing, *id*. at *6-*10, but is unlikely to succeed on the merits because under the APA neither the Commission nor any other defendant constitutes an "agency" that the court can enjoin to produce an assessment, *id*. at *11-*13.

On an interlocutory basis, EPIC appeals the denial of a preliminary injunction. *See* 28 U.S.C. § 1292(a)(1). We agree with the district court that EPIC is unlikely to succeed on its APA claims. But we reach that conclusion for a different reason from the one the district court identified. *See Parsi v. Daioleslam*, 778 F.3d 116, 126 (D.C. Cir. 2015) ("Ordinarily, a court of appeals can affirm a district court judgment on any basis supported by the record, even if different from the grounds the district court cited."). Specifically, we uphold the denial of a preliminary injunction because EPIC has not shown a substantial likelihood of standing. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) ("A party who fails to show a 'substantial likelihood' of standing is not entitled to a preliminary injunction." (quoting *Obama v. Klayman*, 800 F.3d 559, 568 (D.C. Cir. 2015) (opinion of Williams, J.))).[2]

---

[2]    Because EPIC has not met its burden with respect to standing, we do not consider whether any of the defendants constitutes an agency under the E-Government Act or the APA. Nor do we consider the preliminary injunction factors other than EPIC's likelihood of success. A plaintiff unlikely to have standing

4

## I.  BACKGROUND

In 2002, the Congress passed the E-Government Act to streamline government use of information technology "in a manner consistent with laws regarding protection of personal privacy, national security, records retention, access for persons with disabilities, and other relevant laws."  E-Government Act § 2(b)(11).   Section 208 of the Act, entitled "Privacy Provisions," states that "[t]he purpose of this section is to ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government."  *Id*. § 208(a).   To promote that purpose, section 208 requires an "agency" to conduct, review and, "if practicable," publish a privacy impact assessment before it collects "information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons."  *Id*. § 208(b)(1).   A party with standing can make a claim under that provision for relief under the APA's direction to courts to "compel agency action unlawfully withheld," 5 U.S.C. § 706(1), and to "set aside agency action . . . not in accordance with law," *id*. § 706(2)(A).

In May 2017, the President established the Commission as a "solely advisory" body.  Exec. Order No. 13799, § 3.  He charged it with studying and submitting a report about the "integrity of" and "vulnerabilities in" the voting systems and procedures used in federal elections.  *Id*.  Thirty days after

is *ipso facto* unlikely to succeed, *Food & Water Watch*, 808 F.3d at 913; *Klayman*, 800 F.3d at 565, 568 (opinion of Williams, J.); and when the plaintiff is unlikely to succeed, "there is no need to consider the remaining factors," *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).

5

the Commission submits its report, it will cease to exist. *Id*.
§ 6.

In June 2017, Kris Kobach—Secretary of State of Kansas
and Vice Chair of the Commission—wrote a letter to the chief
election officer of each state and the District of Columbia.
Each letter "request[ed]" that the addressee

> provide to the Commission the
> publicly-available voter roll data for [your
> state], including, if publicly available under the
> laws of your state, the full first and last names
> of all registrants, middle names or initials if
> available, addresses, dates of birth, political
> party (if recorded in your state), last four digits
> of social security number if available, voter
> history (elections voted in) from 2006 onward,
> active/inactive status, cancelled status,
> information regarding any felony convictions,
> information regarding voter registration in
> another state, information regarding military
> status, and overseas citizen information.

JA 61-62.  Each letter stated that "any documents" a state
submits to the Commission "will also be made available to the
public," JA 62, but Kobach clarified in district court that "the
Commission intends to de-identify" any voter data it receives
so that "the voter rolls themselves will not be released to the
public," JA 52.   As far as the record shows, only Arkansas has
submitted any data and it "has been deleted without ever
having been accessed by the Commission."   JA 235.

EPIC filed its complaint in July 2017, naming as
defendants the Commission, Kobach and other entities and

6

officials.[3]   As relevant here, the complaint raised two related claims.   Count One alleged "unlawful agency action," i.e., that the defendants "initiate[d] collection of voter data" without first "creating, reviewing, and publishing a privacy impact assessment" under the E-Government Act.   Compl. 12 (capitalization altered).   Count Two alleged "agency action unlawfully withheld," i.e., that the defendants "have failed to create, review, and/or publish a privacy impact assessment for [their] collection of voter data, as required by" the E-Government Act.   *Id*. at 12-13 (capitalization altered). EPIC asked the district court to remedy the alleged violations by (*inter alia*) "halt[ing] collection of personal voter data" and ordering the defendants "to promptly conduct a privacy impact assessment prior to the collection of personal voter data."   *Id*. at 15.

EPIC later moved for a preliminary injunction.   It asked the district court to prohibit the defendants "from collecting state voter data prior to the completion of a privacy impact assessment."   Mem. in Support, Dkt. No. 35-1 at 41.   The court denied the motion.   *EPIC*, 2017 WL 3141907, at *14. Based on the available evidence, the court held (*inter alia*) that EPIC has standing, *id*. at *6-*10, but that the Commission lacks "'substantial independent authority'" and so is not "an 'agency' for purposes of the APA," *id*. at *11 (quoting *Citizens for Responsibility & Ethics in Washington v. Office of Admin.*, 566 F.3d 219, 222 (D.C. Cir. 2009)).   The court was also unpersuaded that any other defendant likely to be involved in

---

[3]   The complaint also named Vice President Michael Pence; Charles Herndon, Director of White House Information Technology; the Executive Office of the President; the Office of the Vice President; the Department of Defense; the General Services Administration; the Executive Committee for Presidential Information Technology; and the United States Digital Service.

7

collecting voter data is an agency under the APA.  *Id*. at
*12-*13.  Accordingly, the court concluded, EPIC "has not
demonstrated a likelihood of success on the merits."  *Id*. at
*13.

## II.   ANALYSIS

"The judicial Power" of the federal courts extends only to
"Cases" and "Controversies," U.S. CONST. art. III, § 2, cl. 1,
"and there is no justiciable case or controversy unless the
plaintiff has standing," *West v. Lynch*, 845 F.3d 1228, 1230
(D.C. Cir. 2017) (citing *Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83, 102 (1998)).   To establish standing, the plaintiff
must show (1) it has suffered a "concrete and particularized"
injury (2) that is "fairly traceable to the challenged action of the
defendant" and (3) that is "likely" to be "redressed by a
favorable decision," i.e., a decision granting the plaintiff the
relief it seeks.  *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504
U.S. 555, 560-61 (1992)).

The plaintiff bears the burden of establishing all three
elements of standing.  *Lujan*, 504 U.S. at 561.   The "manner
and degree of evidence required" depends on the "stage[] of the
litigation."   *Id*.   In the context of a preliminary injunction
motion, we require the plaintiff to "show a 'substantial
likelihood' of standing" "under the heightened standard for
evaluating a motion for summary judgment."   *Food & Water
Watch*, 808 F.3d at 912-13 (quoting *Klayman*, 800 F.3d at 568
(opinion of Williams, J.)); *see Nat'l Wildlife Fed'n v. Burford*,
835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring
and dissenting).   Thus, the plaintiff cannot "rest on . . . mere
allegations, but must set forth by affidavit or other evidence
specific facts" that, if "taken to be true," demonstrate a
substantial likelihood of standing.   *Lujan*, 504 U.S. at 561
(internal quotation omitted).

8

"Because 'standing is not dispensed in gross' but instead may differ claim by claim," "we address seriatim" EPIC's likelihood of standing on each of its two APA claims. *West*, 845 F.3d at 1235 (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).  We conclude that EPIC has not made the requisite showing on either claim.[4]  To simplify the analysis, we start with Count Two.

## A.  Failure To Produce Privacy Impact Assessment

Count Two alleges "agency action unlawfully withheld," namely, the defendants' failure to produce a privacy impact assessment under the E-Government Act.  Compl. 12-13 (capitalization altered).  EPIC asserts that this inaction causes it two types of injury: (1) "informational injury" through the lack of an assessment to which the law allegedly entitles it, Appellant's Reply Br. 4; and (2) "[o]rganizational . . . injury" in that the inaction conflicts with EPIC's mission "to focus public attention on emerging privacy and civil liberties issues," *id*. at 5 (internal quotation omitted).[5]  As relief for the

---

[4]  We owe no deference to the district court's contrary conclusion.  *O'Hara v. Dist. No. 1-PCD*, 56 F.3d 1514, 1522 (D.C. Cir. 1995) (to extent preliminary injunction decision "hinges on questions of law," we review it de novo (internal quotation omitted)); *see Teton Historic Aviation Found. v. Dep't of Def.*, 785 F.3d 719, 724 (D.C. Cir. 2015) (per curiam) (standing is question of law to be assessed de novo).

[5]  In district court, EPIC also advanced a theory of "associational standing."  Reply in Support, Dkt. No. 39 at 19-23. The court rejected it, *EPIC*, 2017 WL 3141907, at *4-*6, and EPIC does not renew it here, Appellant's Reply Br. 2 n.2 ("associational standing" is "not related to any issue on appeal").  We therefore do not consider it.  *See Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016) (party forfeits theory of standing if it fails to advance any argument about it).

9

inaction, EPIC asks that the defendants be ordered "to promptly conduct a privacy impact assessment prior to the collection of personal voter data." Compl. 15. We conclude that EPIC lacks standing to obtain such relief because it has suffered no cognizable informational or organizational injury. We analyze and reject those two asserted types of injury in turn without necessarily agreeing that they are in fact analytically separate here. Indeed, as will be seen, EPIC identifies no organizational harm unrelated to its alleged informational injury. *See infra* p. 11.

### 1. Informational injury

Following *FEC v. Akins*, 524 U.S. 11 (1998), "we have recognized that a denial of access to information can," in certain circumstances, "work an 'injury in fact' for standing purposes," *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011) (*Feld*) (internal quotation omitted). To carry its burden of demonstrating a "sufficiently concrete and particularized informational injury," the plaintiff must show that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("judgment of Congress" is "important" to "whether an intangible harm," including informational harm, "constitutes injury in fact").

We need not consider the first component of the requirement for informational injury because EPIC does not satisfy the second: it has not suffered the type of harm that section 208 of the E-Government Act seeks to prevent.

10

Indeed, EPIC is not even the type of plaintiff that can suffer such harm. *See Friends of Animals*, 828 F.3d at 992 (whether "plaintiff suffers the type of harm Congress sought to remedy" sometimes depends on whether "Congress, in mandating disclosure, sought to protect individuals or organizations like" plaintiff).

Section 208, a "Privacy Provision[]" by its very name, declares an express "purpose" of "ensur[ing] sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." E-Government Act § 208(a). As we read it, the provision is intended to protect *individuals*—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is therefore not the type of plaintiff the Congress had in mind. Nor is EPIC's asserted harm—an inability to "ensure public oversight of record systems," Appellant's Reply Br. 9—the kind the Congress had in mind. Instead, section 208 is directed at individual *privacy*, which is not at stake for EPIC.

## 2. Organizational injury

For similar reasons, EPIC has suffered no organizational injury. Under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), "an organization may establish Article III standing if it can show that the defendant's actions cause a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'" *Feld*, 659 F.3d at 25 (quoting *Havens*, 455 U.S. at 379). "Our case law, however, establishes two important limitations on the scope of standing under *Havens*." *Id*. First, the plaintiff must show that the defendant's "action or omission to act injured the organization's interest." *People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087,

11

1094 (D.C. Cir. 2015) (*PETA*) (internal quotation and brackets omitted).  Second, the plaintiff must show that it "used its resources to counteract that harm."  *Id.* (internal quotation omitted).  EPIC's assertion of organizational standing fails twice over.

EPIC's sole theory of organizational injury is that the defendants' failure to produce a privacy impact assessment injures its interest in using the information contained in the assessment "to focus public attention on emerging privacy and civil liberties issues."  Appellant's Reply Br. 5 (internal quotation omitted).  As we have discussed, however, section 208 of the E-Government Act does not confer any such informational interest on EPIC.  EPIC cannot ground organizational injury on a non-existent interest.  *See Feld*, 659 F.3d at 24-25 (abstract social interest does not give rise to organizational injury).

It follows that any resources EPIC used to counteract the lack of a privacy impact assessment—an assessment in which it has no cognizable interest—were "a self-inflicted budgetary choice that cannot qualify as an injury in fact."  *Feld*, 659 F.3d at 25 (internal quotation omitted).  EPIC's evidence of expenditures only reinforces the point.  It relies exclusively on the declaration of an EPIC "Law Fellow" who before and during this lawsuit submitted Freedom of Information Act (FOIA) requests to (*inter alia*) the Commission and the Department of Justice (DOJ).[6]  JA 236-37.  EPIC offers no

---

[6]  In its rebuttal oral argument, EPIC contended that it has organizational standing not only because of the FOIA requests but because it "contacted the state secretaries to warn them that [an assessment] had not been completed" and because it "launched an internet-based campaign to alert voters that their information was not being protected."  Oral Arg. Recording 30:28-30:59.  EPIC did not advance that contention in its briefs or even during the opening

12

"specific facts" demonstrating that the lack of an assessment *caused* it to submit the requests, *Lujan*, 504 U.S. at 561 (internal quotation omitted); *see* Appellant's Reply Br. 5-6, 10, so we can only speculate.  Speculation is ordinarily fatal to standing, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (it cannot establish injury); *West*, 845 F.3d at 1237-38 (it cannot establish causation or redressability), and that is the case here.   EPIC's wide-ranging FOIA requests sought information about (*inter alia*) DOJ's data-collection efforts under the National Voter Registration Act; DOJ's legal views about the Commission's authority; and various potentially privileged government communications.   An assessment would not likely disclose such information.   *See* E-Government Act § 208(b)(1)(C), (b)(2)(B).   Presumably, then, EPIC would have made similar FOIA requests even if the defendants had produced an assessment.[7]

---

portion of its oral argument.   It thereby forfeited the contention, the merits of which we decline to consider.   *See Coal. of Battery Recyclers Ass'n v. EPA*, 604 F.3d 613, 623 (D.C. Cir. 2010) (argument raised "for the first time during rebuttal oral argument" is "forfeited").

[7]   This fact readily distinguishes *PETA*, 797 F.3d 1087, on which EPIC relies.   There, at the dismissal stage, PETA sufficiently alleged that the USDA's failure to apply Animal Welfare Act regulations to birds caused PETA "to undertake . . . extensive efforts"—and to spend more than $10,000—investigating cruelty to birds and submitting animal-protection complaints under alternative local, state and federal laws.   *Id.* at 1096; *see id.* at 1093-97.   Here, "under the heightened standard for evaluating a motion for summary judgment," *Food & Water Watch*, 808 F.3d at 912, EPIC has not established any equivalently direct causal link between the defendants' inaction and EPIC's own expenditures.

13

In short, not only does EPIC have no cognizable interest in a privacy impact assessment but the resources it spent were not even demonstrably attributable to the lack of an assessment. It has suffered no organizational injury, much less an injury caused by the defendants.

### B.  ATTEMPTING TO COLLECT VOTER DATA WITHOUT FIRST PRODUCING PRIVACY IMPACT ASSESSMENT

Count One alleges "unlawful agency action," namely, the defendants' attempted collection of voter data without first producing a privacy impact assessment under the E-Government Act.  Compl. 12 (capitalization altered).  As relief for this asserted violation, EPIC asks that the defendants be ordered "to halt collection of personal voter data."  *Id*. at 15.  We again conclude that it lacks standing to obtain such relief.

To repeat, EPIC is not a voter.  And as far as the record shows, it has no traditional membership, let alone members who are voters.  Unsurprisingly, then, it does not claim standing on behalf of any voter whose data is likely to be collected.  *See supra* note 5.  Instead, in seeking to halt collection of voter data, it advances the same theories of informational and organizational standing that it asserts in seeking to compel a privacy impact assessment.  We see no reason to "accept[] a repackaged version" of those "failed theor[ies]."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).  As explained above, EPIC has suffered no informational or organizational injury from the defendants' failure to produce an assessment.  *A fortiori*, it has suffered no informational or organizational injury from the defendants' attempt to collect voter data without first producing an assessment.

14

Moreover, halting collection of voter data would not "likely" redress any informational or organizational injury, even had EPIC suffered one.  *Lujan*, 504 U.S. at 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (internal quotation omitted)); *West*, 845 F.3d at 1235 ("The key word is 'likely.'"). Assuming arguendo that the Commission or another defendant is an agency subject to the E-Government Act, it need not prepare a privacy impact assessment unless it plans to collect information.     E-Government   Act   §   208(b)(1)(A). Accordingly, ordering the defendants *not* to collect voter data only *negates* the need (if any) to prepare an assessment, making it *less* likely that EPIC will obtain the information it says is essential to its mission of "focus[ing] public attention on emerging privacy and civil liberties issues."  Appellant's Reply Br. 5 (internal quotation omitted).

\* \* \* \* \*

The doctrines of informational and organizational standing do not derogate from the elemental requirement that an alleged injury be "concrete and particularized."  *Lujan*, 504 U.S. at 560; *see Akins*, 524 U.S. at 24-25 (informational); *Havens*, 455 U.S. at 379 (organizational).  On this record, EPIC's asserted injuries do not meet that requirement. Because EPIC does not show a substantial likelihood of standing to press its claims that the defendants have violated the E-Government Act, we affirm the district court's denial of a preliminary injunction.

*So ordered*.

WILLIAMS, *Senior Circuit Judge*, concurring in part and concurring in the judgment:  Because it "has not suffered the type of harm that § 208 of the E-Government Act seeks to prevent," Maj. Op. at 9, EPIC has failed to allege a legally cognizable injury-in-fact.  So I agree that EPIC lacks standing.  But given that EPIC claims only organizational standing and "identifies no organizational harm unrelated to its alleged informational injury," *id.*, I see no need for any separate discussion of "organizational injury."  *Id.* at 10-13.  Nor, indeed, do I see any need for a separate discussion of EPIC's alternative reformulation of its merits claim as an objection to defendants' effort to collect data without previously filing a Privacy Impact Statement ("PIA").  *Id.* at 13-14.

\* \* \*

As an organization, EPIC has in principle two potential paths to establish standing:  "associational," on behalf of its members, and "organizational," on behalf of itself.  Before us, it doesn't renew the associational standing claim made in district court.  That leaves only organizational standing.  For those purposes, of course, it must establish an injury that qualifies under Article III, along with the requisite causation and redressability.  See, e.g., *PETA v. U.S. Department of Agriculture*, 797 F.3d 1087, 1106 (D.C. Cir. 2015) (Millett, J., *dubitante*).

To establish organizational standing, EPIC asserts only a single injury:  that the defendants' omissions have caused it to go without information—the contents of a PIA—that it could use to educate the public.

Where an organization's only asserted injury is an informational one, we have not engaged in a separate analysis of informational and organizational injury.  See, e.g., *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)

2

(addressing organization's claim of informational injury as such). If an organization's only claimed injury is informational, additional discussion of the same facts under the "organizational" rubric will not clarify the court's reasoning.

In cases where the plaintiff claims organizational injuries of various types (including informational ones), we have analyzed the informational injury as such and the other alleged injuries as organizational. See, e.g., *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011) (rejecting organization's claim of informational standing, *id*. at 22-24, and its claims that Feld's use of chains and bullhooks afforded organizational standing by fostering, plaintiffs argued, "a public impression that these practices are harmless," *id*. at 24-28). My guess—only a guess—is that the practice arose because organizations found informational injury a comparatively easy way to show standing.

But organizational standing is merely the label assigned to the *capacity* in which the organization contends it has been harmed; it is not a separate *type* of injury. In its capacity as an organization, EPIC has alleged one harm, packaged as two theories (perhaps in the hope that such packaging will increase the odds of success). There is no need for us to accept that packaging; doing so is a step away from, not towards, legal clarity.

# Appendix 2

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 17-5171**                                    **September Term, 2017**

**1:17-cv-01320-CKK**

**Filed On:** April 2, 2018

Electronic Privacy Information Center,

        Appellant

    v.

Presidential Advisory Commission on Election
Integrity, et al.,

        Appellees


**BEFORE:**   Garland, Chief Judge; Henderson, Rogers, Tatel, Griffith,
Kavanaugh, Srinivasan, Millett, Pillard, Wilkins, and Katsas*, Circuit
Judges; Williams and Ginsburg, Senior Circuit Judges

### O R D E R

    Upon consideration of appellant's petition for rehearing en banc or, in the
alternative, for vacatur and remand, the opposition thereto, and the absence of a
request by any member of the court for a vote, it is

    **ORDERED** that the petition and the alternative request for vacatur and remand
be denied.


### Per Curiam


                             **FOR THE COURT:**
                             Mark J. Langer, Clerk

          BY:   /s/
                   Ken R. Meadows
                   Deputy Clerk


* Circuit Judge Katsas did not participate in this matter.

# Appendix 3

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 17-5171**                                    **September Term, 2017**

**1:17-cv-01320-CKK**

**Filed On:** April 2, 2018

Electronic Privacy Information Center,

      Appellant

   v.

Presidential Advisory Commission on
Election Integrity, et al.,

      Appellees

**BEFORE:**   Henderson, Circuit Judge; Williams and Ginsburg, Senior Circuit
Judges

## O R D E R

     Upon consideration of appellant's motion to vacate decision, dismiss appeal as
moot, and remand case, the opposition thereto, and the reply, it is

     **ORDERED** that the motion be denied.

### Per Curiam

                      **FOR THE COURT:**
                      Mark J. Langer, Clerk

              BY:   /s/
                      Ken R. Meadows
                      Deputy Clerk

# Appendix 4



**U.S. Department of Justice**

Civil Division
Federal Programs Branch

20 Massachusetts Avenue, N.W.
Washington, D.C. 20530

Kristina A. Wolfe                                    Tel:  (202) 353-4519
Trial Attorney                                       kristina.wolfe@usdoj.gov

June 20, 2018

Theresa J. Lee
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

Javier Guzman
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043

Harry Sandick
Patterson Bellnap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

Marc Rotenberg
Electronic Privacy Information Center
1718 Connecticut Avenue, N.W.
Suite 200
Washington, DC 20009

Skip Pita
Pita Weber Del Prado
9350 South Dixie Highway
Suite 1200
Miami, FL 33156

John Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001

   **Re:** *Disposal of State Voter Data Obtained by the Former Presidential Advisory Commission on Election Integrity*

Dear Counsel:

As you know, following the dissolution of the Presidential Advisory Commission on Election Integrity (the "Commission") on January 3, 2018, the Director of the White House Office of Information Technology stated that the White House intends to destroy all state voter data pending consultation with the National Archives and Records Administration, as permitted by federal law. *See* Third Herndon Decl. ¶ 4, *Joyner v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-22568-MGC (S.D. Fla.), ECF No. 82-2. The applicable federal law, the Presidential Records Act ("PRA"), provides that:

> (c) During the President's term of office, the President may dispose of those Presidential records of such President that no longer have administrative, historical, informational, or evidentiary value if--
>
>> (1) the President obtains the views, in writing, of the Archivist concerning the proposed disposal of such Presidential records; and
>>
>> (2) the Archivist states that the Archivist does not intend to take any action under subsection (e) of this section.

44 U.S.C. § 2203(c).

We are writing to you now because, in accordance with this provision, the President has obtained the written views of the Archivist concerning the proposed disposal of the state voter data.[1] The Archivist has stated, in accordance with Section 2203(c)(2) of the Presidential Records Act, that he does not intend to take any action under subsection (e) of Section 2203. Further, the Archivist agreed that the records proposed for disposal do not have sufficient administrative, historical, informational, or evidentiary value to warrant continued (i.e., permanent) preservation under the PRA, and that it is reasonable to dispose of them.

As you know, however, these same records are subject to litigation holds, as they may be relevant to claims brought in your cases. *See, e.g.*:

- *Am. Civil Liberties Union v. Trump*, No. 17-cv-1351-CKK (D.D.C.), Am. Compl. ¶¶ 165, 177, 186, Request for Relief ¶¶ 1(a), 2(d), ECF No. 28-1;

- *Common Cause v. Presidential Advisory Comm'n on Election Integrity*, No. 17-1398-RCL (D.D.C.), Am. Compl. ¶¶ 144, 177, 130, Prayer for Relief ¶ 6, ECF No. 21;

- *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-2361-CKK (D.D.C.), Compl. ¶¶ 89-91, ECF No. 1;

---

[1] The specific documents proposed for disposal are "[t]he publicly available State voter roll data submitted by State election officials in response to the June 28, 2017, request from Kris Kobach, Vice Chair of the former Commission, as clarified by Vice Chair Kobach's letter of July 26, 2017, to State election officials."

- *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, Second Am. Compl. ¶¶ 58, 78, 81, Requested Relief ¶ C, No. 17-cv-1320-CKK (D.D.C.), ECF No. 33;

- *Joyner v. Presidential Advisory Comm'n v. Election Integrity*, No. 17-cv-22568-MGC (S.D. Fla.), Am. Compl. ¶¶ 147, 153, 168, Prayer for Relief ¶ E, ECF No. 65;

- *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-1354-CKK (D.D.C.), Compl. ¶¶ 51-53, Prayer for Relief ¶ f, ECF No. 1.

This disposal action is consistent with the relief that many of you requested in your complaints.  Nevertheless, given the litigation holds, we request your written consent before proceeding further.

Please let us know at your earliest convenience if you have any questions or concerns.


Sincerely,


*/s/ Kristina A. Wolfe*
ELIZABETH J. SHAPIRO
CAROL FEDERIGHI
KRISTINA A. WOLFE
JOSEPH E. BORSON
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Phone: (202) 353-4519
Email: kristina.wolfe@usdoj.gov

*Counsel for Defendants*